[No. D047022. Fourth Dist., Div. One. May 2, 2006.]

Conservatorship of the Person of CHRISTOPHER A.;
SAN DIEGO COUNTY HEALTH & HUMAN SERVICES AGENCY,
Petitioner and Respondent, v.
CHRISTOPHER A., Objector and Appellant.

**COUNSEL**

Christopher Blake, under appointment by the Court of Appeal, for Objector and Appellant.

John J. Sansone, County Counsel, and Leonard W. Pollard II, Deputy County Counsel, for Petitioner and Respondent.

OPINION

**McDONALD, Acting P. J.**—Christopher A. appeals a judgment establishing a conservatorship for him under the Lanterman-Petris-Short Act (LPS) (Welf. & Inst. Code, § 5000 et seq.).[1] A jury found Christopher unable, as a result of a mental disorder, to provide for his basic needs for food, clothing or shelter. Accordingly, the court established a conservatorship for Christopher; appointed the public conservator as conservator of his person; imposed disabilities under Welfare and Institutions Code section 5357[2]; determined the least restrictive level of placement necessary to achieve the purpose of treatment under section 5358, subdivision (a)(1)(A); and granted powers to the conservator under section 5358, subdivision (b). The court adopted the proposed judgment submitted by the Public Conservator of the County of San Diego (County) and agreed to by Christopher's trial counsel (Short).

Christopher contends his attorney did not have authority to agree to the judgment to the extent it included placement, disabilities, and conservator powers without the court obtaining his on-the-record consent.[3] Because of the significant liberty interests at risk by imposing LPS conservatorships, we conclude the court must obtain on the record the consent of the proposed conservatee regarding the terms and consequences of a stipulated judgment. We reverse the portion of the judgment ordering the placement, disabilities, and conservator's powers, and remand for further proceedings in accordance with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

In May 2005 County petitioned for appointment of a temporary conservator and conservator of the person for Christopher. The petition for temporary conservatorship was immediately granted. A County investigator submitted to the court a report pursuant to section 5354 that included recommendations for least restrictive placement, disabilities to impose on the proposed conservatee, and powers of the conservator. A copy of the report was provided to Christopher. Subsequently, a notice of hearing for an LPS conservatorship was given to Christopher. In accordance with section 5350, subdivision (d), Christopher demanded a jury trial.

---

[1] We have abbreviated Christopher A.'s name to protect his privacy. (Welf. & Inst. Code, § 5325.1, subd. (b); *Conservatorship of Susan T.* (1994) 8 Cal.4th 1005, 1008, fn. 1 [36 Cal.Rptr.2d 40, 884 P.2d 988].)

[2] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[3] Christopher is not challenging the jury's verdict on the issue of grave disability.

On July 26, 2005, a jury trial was held on the issue of whether Christopher was gravely disabled within the meaning of LPS. The jury returned a unanimous verdict that Christopher had a mental disorder and, as a result of the mental disorder, was unable to presently provide for his basic personal needs of food, clothing, and shelter. Therefore, the jury concluded Christopher was gravely disabled.

During a hearing held on July 26, 2005, outside the presence of the jury, Dr. Prakash Bhatia testified on the issues of least restrictive placement, disabilities, and proposed powers of the conservator. Dr. Bhatia said he believed Christopher was incapable of safely operating a car, entering into contracts, making decisions about his own medical treatment, and possessing a firearm. However, he testified Christopher was capable of completing a voter registration affidavit. Dr. Bhatia believed the least restrictive level of placement for Christopher was in a locked facility. During cross-examination, Short asked the doctor if he believed Christopher was capable of entering into less significant contracts, including cellular telephone service agreements. Although Dr. Bhatia did not directly answer the question, he said the treatment program at a locked facility provides for these types of decision-making opportunities.

Before the conclusion of the trial, County prepared and submitted to the court and Short a proposed judgment. After the jury returned its verdict, Short informed the court the proposed judgment required clerical changes but he anticipated reaching an agreement with the County on the terms of the judgment. The proposed judgment was approved by Short and subsequently signed by the court. The court did not obtain on the record Christopher's consent regarding the contents and consequences of the judgment that had been approved by Short.[4]

## DISCUSSION

## I

### Standard of Review

"Appellate courts conduct an independent review of questions of law; they decide them without deference to the decision made below." (*Coburn v.*

---

[4] It appears Christopher may have attempted to discuss the proposed judgment with the court. On July 26, 2005, when the court first inquired about the proposed judgment, Christopher asked the court if he could speak. The court recommended he first discuss his issue with his attorney. After the discussion with his attorney, no comment was made to the court. Although this dialogue may not be related to the proposed judgment, it appears Christopher wished to discuss the topic with the court.

*Sievert* (2005) 133 Cal.App.4th 1483, 1492 [35 Cal.Rptr.3d 596].) Determining if the trial court adhered to a constitutional principle is solely a question of law. (*California Assn. of Dispensing Opticians v. Pearle Vision Center, Inc.* (1983) 143 Cal.App.3d 419, 426 [191 Cal.Rptr. 762].) The issue of whether procedural due process requires court consultation with and consent of a conservatee on the record before imposing the placement, disabilities, and conservator powers included in a judgment approved by the conservatee's attorney (stipulated judgment) is a question of law. Therefore, we review this issue de novo.

## II

### *Analysis*

■ Christopher contends the court erred by accepting the stipulated judgment submitted by the attorneys without first consulting him on the consequences of the agreement. He asserts the court's acceptance of the stipulated judgment without first conducting an on-the-record consultation with him and obtaining his consent is a violation of his procedural due process rights. Because we conclude it is solely the province of the court to determine the proper placement of the conservatee, the disabilities to impose, and the duties and powers of the conservator, a court may not accept a stipulated judgment on these issues without first consulting the conservatee and obtaining on the record his express consent.

■ "Procedural due process is a watchword, not the unwavering equivalent of a formal hearing." (*Conservatorship of Moore* (1986) 185 Cal.App.3d 718, 728 [229 Cal.Rptr. 875].) Due process depends on " 'the need to serve the purpose of minimizing the risk of error.' " (*Ibid.*) Under the Fourteenth Amendment to the United States Constitution, the propriety of the actions of government are determined based on the consideration of: (1) the private interests involved, (2) the risk of erroneous deprivation under the current procedures, (3) the probable value of additional safeguards, and (4) the government interests involved. (*Moore,* at pp. 728–729, citing *Mathews v. Eldridge* (1976) 424 U.S. 319, 334–335 [47 L.Ed.2d 18, 96 S.Ct. 893].) The California Constitution focuses broadly on the "individual's due process liberty interest to be free from arbitrary adjudicative procedures." (*Ryan v. California Interscholastic Federation-San Diego Section* (2001) 94 Cal.App.4th 1048, 1069 [114 Cal.Rptr.2d 798].) This requires " 'consideration of (1) the private interest that will be affected by the official action,

(2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, (3) the dignitary interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible government official, and (4) the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [Citation.]' " (*Moore,* at p. 729.)

■   The private interests involved in a conservatorship proceeding are the potential loss of liberty and stigma resulting from the disabilities imposed on a conservatee. "The [LPS] statute is designed to provide prompt, short-term, community-based intensive treatment, without stigma or loss of liberty, to individuals with mental disorders . . . who are gravely disabled." (*Conservatorship of Chambers* (1977) 71 Cal.App.3d 277, 282 [139 Cal.Rptr. 357], fn. omitted.) If a conservatorship is established, the court may order the conservatee placed in a mental health facility for a period of up to one year, "with the possibility of additional year-long extensions (§§ 5358, 5361)." (*Conservatorship of Roulet* (1979) 23 Cal.3d 219, 224 [152 Cal.Rptr. 425, 590 P.2d 1].) As a result, "civil commitment to a mental hospital, despite its civil label, threatens a person's liberty and dignity on as massive a scale as that traditionally associated with criminal prosecutions." (*Id.* at p. 223.)

■   To limit the stigma and loss of liberty, procedural safeguards were enacted "to protect an individual against erroneous commitment." (*Conservatorship of Chambers, supra,* 71 Cal.App.3d at p. 282.) These procedures include a required hearing within 30 days of filing a petition for conservatorship (§ 5365); appointment of counsel to represent the conservatee at the hearing (§ 5365); a comprehensive investigation and report recommending placement, disabilities, and powers of the conservator (§ 5354); and the right to a jury trial in lieu of a hearing (§ 5350, subd. (d)). (*Chambers,* at pp. 282–283.) The court is also required to conduct an on-the-record voir dire of the proposed conservatee regarding the nature of the proceeding and the effect of the proceeding on his or her basic rights. (Prob. Code, § 1828; *Chambers,* at pp. 286–287.)   ■   In addition, the California Supreme Court has found certain procedural safeguards commonly reserved for criminal defendants are constitutionally required in LPS conservatorship proceedings, including the right to a jury trial, proof beyond a reasonable doubt, and a unanimous jury verdict. (*Conservatorship of Roulet, supra,* 23 Cal.3d at p. 235; *In re Gary W.* (1971) 5 Cal.3d 296, 307 [96 Cal.Rptr. 1, 486 P.2d 1201].) However, certain protections for criminal defendants, including the

right against self-incrimination and exclusion of certain evidence, have not been applied to LPS proceedings because they are contrary to the statute's purpose of providing assistance to disabled individuals unable to help themselves. (*Conservatorship of Baber* (1984) 153 Cal.App.3d 542, 550 [200 Cal.Rptr. 262]; *Conservatorship of Susan T., supra,* 8 Cal.4th at p. 1020.)

■ If a person is found gravely disabled and a conservatorship is established, the conservatee does not forfeit legal rights or suffer legal disabilities merely by virtue of the disability. (§ 5005; *Conservatorship of Walker* (1989) 206 Cal.App.3d 1572, 1578 [254 Cal.Rptr. 552].) The court must separately determine the duties and powers of the conservator, the disabilities imposed on the conservatee, and the level of placement appropriate for the conservatee. (§§ 5357, 5358.) The party seeking conservatorship has the burden of producing evidence to support the disabilities sought, the placement, and the powers of the conservator, and the conservatee may produce evidence in rebuttal. (*Walker,* at p. 1578.)[5] ■ Although the proposed conservatee waives the right to a prompt court hearing after requesting a jury trial (§ 5350, subd. (d)), this waiver extends only to a hearing *on the issue of grave disability.* Section 5365 suggests the purpose of the LPS hearing is to consider "all petitions." The petition is filed by the County (§ 5352) and includes, or is later supplemented by, the investigator's report, which includes recommendations on placement, disabilities, and powers of the conservator (§§ 5354, 5356). Therefore, a proposed conservatee has a right to a hearing or jury trial on the issue of grave disability *and* a court hearing to determine placement, disabilities, and conservator duties and powers.

■ By accepting the stipulated judgment, the court allowed Short to waive Christopher's right to a court hearing on the issues of placement, disabilities, and powers of the conservator. The role of an attorney in litigation is to "[protect] the client's rights and [achieve] the client's fundamental goals." (*Linsk v. Linsk* (1969) 70 Cal.2d 272, 278 [74 Cal.Rptr. 544, 449 P.2d 760].) In carrying out this duty, the attorney has the general

---

[5] The conservator also bears the burden of proof on these issues. The level of the burden is not well settled and need not be determined for the purposes of this appeal. However, case law suggests that the party seeking conservatorship has the burden to prove by clear and convincing evidence the least restrictive placement and disabilities necessary to achieve the purpose of the LPS conservatorship. (See *Riese v. St. Mary's Hospital & Medical Center* (1987) 209 Cal.App.3d 1303, 1322 [271 Cal.Rptr. 199] [clear and convincing evidence required to show conservatee is unable to provide informed consent to medical treatment].)

authority to stipulate to procedural matters that may " 'be necessary or expedient for the advancement of [the] client's interest[s].' " (*Price v. McComish* (1937) 22 Cal.App.2d 92, 97 [70 P.2d 978].) However, the attorney may not, without the consent of his or her client, enter into an agreement that "impair[s] the client's substantial rights or the cause of action itself." (*Linsk*, at p. 276.) Here, the only evidence presented on the issues of placement, disability, and conservator powers was the testimony of Dr. Bhatia given during a separate court evidentiary hearing on the day of the trial. After the jury returned its verdict, the discussion of these issues was limited to the status of a proposed judgment submitted by County. The attorneys said they expected to reach an agreement regarding the terms of the judgment and the court advised the attorneys that it expected they would inform it if any arguments were required. The court addressed Christopher only twice: when he asked to make a statement to the court and it advised him to discuss concerns first with his attorney; and, finally, to wish him good luck.[6] Three weeks later the proposed judgment, which was approved by Short, was submitted to and signed by the court. Nothing in the record shows Christopher consented to the terms of the proposed judgment regarding placement, disabilities, and conservator powers.

■ We conclude a stipulated judgment approved by the conservatee's attorney and adopted by the court after no formal hearing on the issues of placement, disabilities, and powers of the conservator is not a constitutionally sound safeguard against error. We reach this conclusion even though both the investigator's report and the testimony of Dr. Bhatia tended to support the conclusions in the judgment. A proposed conservatee is at risk of substantial deprivation of his or her liberty interests for *at least* a period of one year. (*Conservatorship of Roulet, supra,* 23 Cal.3d at p. 224.) To allow the conservatee's attorney to waive the right to a hearing and agree to the extent of the deprivation without the express consent of the conservatee is contrary to the principles of procedural due process. A waiver of the right to a hearing on these issues eliminates a procedural safeguard already in place. Therefore, we conclude that before accepting a stipulated judgment on placement, disabilities, and conservator powers, the court on the record must consult with the conservatee to instruct him or her on the consequences of the stipulation and obtain the conservatee's express consent to the stipulation on those issues.[7]

---

[6] As it appears in the record, the court did not address Christopher regarding the consequences of the proposed judgment and did not consult Christopher on the establishment of the conservatorship and the appointment of the proposed conservator as required by Probate Code section 1828.

[7] Our conclusion is based on the assumption the conservatee is competent and has the ability to "knowingly and intelligently waive [his or her] hearing rights." (See *Conservatorship of Moore, supra,* 185 Cal.App.3d at p. 732.)

## DISPOSITION

The portion of the judgment specifying the placement, disabilities, and powers of the conservatee is reversed and the matter is remanded for further proceedings in accordance with the views expressed in this opinion. In all other respects the judgment is affirmed.

McIntyre, J., and O'Rourke, J., concurred.

A petition for a rehearing was denied May 17, 2006, and respondent's petition for review by the Supreme Court was denied August 30, 2006, S144250.