Filed 9/24/14  Conservatorship of Daniel S. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| Conservatorship of the Person of DANIEL S. | |
| PUBLIC GUARDIAN, | E059064 |
| Petitioner and Respondent, | (Super.Ct.No. RIP1300254) |
| v. | **OPINION** |
| DANIEL S., | |
| Objector and Appellant. | |

APPEAL from the Superior Court of Riverside County.  F. Clark Sueyres, Jr., Judge.  (Retired judge of the San Joaquin Super Ct. assigned by the Chief Justice pursuant to art. VI, §6 of the Cal. Const.)  Reversed.

Suzanne Davidson, under appointment by the Court of Appeal, for Objector and Appellant.

Pamela J. Walls, County Counsel, and Stacy C. Keffer, Deputy County Counsel, for Petitioner and Respondent.

Daniel S. appeals a judgment establishing a conservatorship for him under the Lanterman-Petris-Short (LPS) Act (Welf. & Institutions Code, §5000 et. seq.).[1]  The trial court determined that Daniel had a grave disability that required establishment of a conservatorship.  Rather than hold a placement hearing to determine the least restrictive level of placement for Daniel under the conservatorship, the court accepted counsel's representation that defendant's current placement in a locked facility was appropriate despite statements made by Daniel that he did not agree with the placement.

Daniel claims on appeal that the court failed to comply with the LPS statutory requirements and violated his procedural due process rights and liberty interests by failing to hold a separate court hearing on the issues of placement, disabilities and powers of the conservator.  We agree with Daniel that counsel's statement accepting the placement and waiving a hearing violated his procedural due process rights because it was clear on the record that Daniel did not agree with counsel.

I

FACTUAL AND PROCEDURAL BACKGROUND

On April 3, 2013, the Riverside County Public Guardian's Office (Public Guardian) filed a petition for appointment of temporary conservator of the person of Daniel.  According to the temporary petition, on March 18, 2013, Daniel had been detained by the Banning Police Department due to aggressive behavior he exhibited at his grandmother's home.  Daniel had been yelling at his grandmother and she was afraid of

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

him. He also was screaming at himself. Daniel was placed on a section 5150 hold and attempted to attack the staff at the facility where he was being held. A conservatorship was recommended as a result of Daniel suffering from a grave disability due a mental disorder. A staff psychiatrist at Riverside County Regional Medical Center had evaluated Daniel and determined that Daniel was unable to provide for his basic needs, he was delusional, hearing voices and was a danger to others.

The petition for appointment of a temporary conservatorship was immediately granted. William J. Van Der Poorten was appointed as Daniel's temporary conservator.

On April 3, 2013, the Public Guardian filed a petition for appointment of permanent conservator (petition) based on Daniel suffering from a grave disability. Dr. Kenneth Hutchins, a clinical psychologist, interviewed Daniel, completed other evaluations and filed a report with the court.

Dr. Hutchins reported that Daniel was 22 years old and his parents were divorced. He had lived a majority of his life with his mother. He had in the past held jobs in construction and had been a lifeguard. Daniel had four psychiatric hospitalizations since October 2012. This was his first temporary LPS conservatorship.

On March 18, 2013, Daniel was at his grandmother's house and was very agitated. He was yelling profanities at himself and his grandmother. Daniel was placed at Shandin Hills, a locked facility, on April 23, 2013. At times, Daniel admitted his mental illness and other times he denied that he currently suffered from a mental illness. Dr. Hutchins diagnosed Daniel with schizoaffective disorder. Both of Daniel's parents believed it was

3

best if he stayed in a mental health facility and receive treatment. Any alternatives to placement in a locked facility did not appear appropriate to meet his basic needs.

Daniel opposed the petition and requested a court trial. The hearing was conducted on June 10, 2013. Daniel was represented by a public defender. Daniel testified that he was housed at Shandin Hills. Daniel had been told by doctors that he was a paranoid schizophrenic but he thought he was misdiagnosed. He claimed to have "spiritual problems" and not a mental illness.

Daniel was asked where he would live if he were not on a conservatorship. He responded that he wanted to go to college and play football. He would initially go to a homeless shelter. He did not know which shelter he would go to but wanted to go to one that was closest to the court. He believed he was on two medications and would take them if released assuming he had a "mental illness." He would see a doctor because he wanted to get "medically cleared" to join the Army. He would "possibly" see a psychiatrist on his own. Daniel received about $800 to $900 a month in SSI disability payments.

Daniel planned to get a job working at a fast food restaurant once he was released. He had never worked in the food industry but believed he would be fine. Daniel had previously been staying at a campground. Daniel did not want to be under conservatorship; he wanted a "chance at society." Daniel denied he was hearing voices and claimed his "spiritual problems" had gone away.

4

Dr. Hutchins also testified. Dr. Hutchins had reviewed records from Shandin Hills, spoke with Daniel's friend, and Daniel's father. Dr. Hutchins had diagnosed defendant with schizoaffective disorder, bipolar type. The symptoms for this disorder were hallucinations, delusions, mental confusion and behavioral instability. Daniel felt that he had a spirit moving in and out of his body. This mental illness affected his ability to properly provide for his own food, clothing and shelter. He had shown quick aggression toward family members who were reluctant to allow him back into their residences. He had four prior hospitalizations due to interactions with law enforcement.

Dr. Hutchins concluded that Daniel was gravely disabled. Daniel did not understand his diagnosis. Daniel claimed to have spiritual problems but Dr. Hutchins believed they were hallucinations.

Daniel had advised him that if he was not on conservatorship, he would live with his ex-girlfriend's mother, Judy Dexter. He also indicated he would buy a trailer and would park it at a campground. Dr. Hutchins did not believe going to a homeless shelter would be a viable option due to his continued denial of his mental illness; he most likely would be returned to a mental facility. Daniel had told Dr. Hutchins that his medications made him worse. If he stopped taking the medications, Dr. Hutchins believed his psychosis would return. Dr. Hutchins recommended that he remain on a conservatorship. Dr. Hutchins had been informed that Daniel's behavior had been good while housed at Shandin Hills.

5

The trial court found that defendant was gravely disabled. The trial court ruled that Daniel would continue to be housed at Shandin Hills, as will be discussed in more detail, *post*. The trial court's order also included that he could not possess a license to operate a motor vehicle, he could not possess a firearm, and the issue of his right to refuse medical treatment was reserved.

II

MOOTNESS

Initially, we note that the maximum one-year period of confinement under the conservatorship expired on June 10, 2014. (§ 5361.) As such, the appeal is technically moot. We have not been asked by respondent to dismiss the appeal on these grounds. On our own motion, we have taken judicial notice of the civil case report for Riverside County Superior Court case Number RIP1300254. (Evid. Code, § 451, subd. (a).) According to the case report, on May 6, 2014, a petition for reappointment of conservator for Daniel was filed and a jury trial on the matter is pending. If a re-appointment petition is filed before the year expires, the court can order the conservatee to be held until the proceedings have been completed. (§ 5361.)

"A case is moot when the decision of the reviewing court 'can have no practical impact or provide the parties effectual relief.' [Citations.]" (*MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 214.) "When no effective relief can be granted, an appeal is moot and will be dismissed." (*In re Jessica K.* (2000) 79 Cal.App.4th 1313, 1315.)

However, "[E]ven if a conservatorship terminates prior to appellate review, the appeal is not moot if it raises issues that are capable of repetition yet avoiding review. [Citation.]" (*Conservatorship of Carol K.* (2010) 188 Cal.App.4th 123, 133.) "'Because a conservatorship is relatively brief (one year) in comparison with the appellate process, we find it likely that this issue . . . is one capable of recurring, yet of evading review because of mootness.' [Citation.]" (*Conservatorship of Joseph W.* (2011) 199 Cal.App.4th 953, 961.) "In addition, the continuing stigma of wrongful commitment, which continues even after the commitment has ceased, is grounds for entertaining an appeal. The issue is not moot, because "'collateral consequences remain even after the conservatorship has been terminated." [Citations.]' [Citation.]" (*Conservatorship of Carol K., supra,* at p. 133.)

We conclude the appeal should be heard because it raises issues that are capable of recurring, yet evading review because of mootness. (See *Conservatorship of Susan T.* (1994) 8 Cal.4th 1005, 1011, fn. 5.) In addition, it could have collateral consequences in any further reestablishment petitions. [2]

Respondent has argued that the appeal is moot because after three months of being housed in the locked facility at Shandin Hills, Daniel was transferred to a less restrictive facility. Daniel does not contest in the reply brief that he was subsequently moved. However, Daniel responds that he was subjected to three months in the locked facility

---

[2] We also take judicial notice of a minute order dated August 14, 2014, from case Number RIP1300254 which shows that Daniel is represented by the same counsel as the original conservatorship proceedings.

7

because he was not afforded a hearing on his placement in violation of due process and his liberty interests. Further, his initial placement in the locked facility could be considered in future LPS proceedings. We decline to find the case moot on the grounds argued by Respondent. It is conceivable that the trial court could consider the concession on placement in the reestablishment proceeding.

## III

## PLACEMENT HEARING

Daniel asserts that the trial court's order adopting his counsel's representation that he should be housed in a locked facility requires reversal.

A.      *Additional Background Information*

After hearing evidence on Daniel's mental illness, the trial court ruled, "Well, I do find beyond a reasonable doubt that [Daniel] is gravely disabled. There's no doubt that within moments of termination of any conservatorship proceedings [defendant] is going to decline to take his meds, and he's only functioning as well as he does right now because he is taking his meds." Daniel then interrupted and stated, "Then I'll stay on my meds." The trial court continued, "The Court finds he's gravely disabled. That makes the other necessary findings for the conservatorship."

The following exchange then occurred;

"THE COURT:  Do you wish to schedule a placement hearing?

[Public Guardian]:  Your Honor, I know we would need an accounting review. I don't know if the public defender wants to set a placement hearing.

[Public Defender]: Your Honor, I believe the placement is appropriate at this time and it is least restrictive.

[Daniel]: It was already said it was inappropriate by the first person I spoke with there.

[Public Guardian]: Your Honor, [Daniel] is able to complete an affidavit of voter registration. He was advised that his California driver's license would be suspended while under conservatorship, and he's unable to own or possess a firearm. We'd still reserve on the issue of medication.

[Daniel]: Not Appropriate.

[THE COURT]: All right. So that will be the order of the Court."

Daniel later complained that he was not getting a chance in society. The trial court responded, "- - you can work yourself out of the position you find yourself. I encourage you to do that." Daniel responded, "I'm just barely learning about life itself. I can't learn with a bunch of crazy people around me. I can't learn anything there." The trial court responded, "Thank you, sir. Good luck to you."

B.      *Analysis*

"The LPS Act authorizes the superior court to establish a conservatorship of a person who is gravely disabled as a result of a mental disorder. [Citations.]" (*Conservatorship of John L.* (2010) 48 Cal.4th 131, 139.) "The liberty interests at stake in [an LPS] conservatorship proceeding are significant. A person found to be gravely disabled may be involuntarily confined for up to one year, and the conservatorship may

9

be extended for additional one-year periods, so long as the person remains gravely disabled." (*Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 540.)

"'If a person is found gravely disabled and a conservatorship is established, the conservatee does not forfeit legal rights or suffer legal disabilities merely by virtue of the disability. [Citations.] The court must separately determine the duties and powers of the conservator, the disabilities imposed on the conservatee, and the level of placement appropriate for the conservatee. [Citations.] The party seeking conservatorship has the burden of producing evidence to support the disabilities sought, the placement, and the powers of the conservator, and the conservatee may produce evidence in rebuttal." [Citation.]" (*Conservatorship of George H.* (2008) 169 Cal.App.4th 157, 165.) "Therefore, a proposed conservatee has a right to a hearing or jury trial on the issue of grave disability *and* a court hearing to determine placement, disabilities, and conservator duties and powers." (*Conservatorship of Christopher A.* (2006) 139 Cal.App.4th 604, 612 (*Christopher A.*); see also *Conservatorship of Amanda B.* (2007) 149 Cal.App.4th 342, 354.)

In *Christopher A.*, the conservatee was found to be gravely disabled by a jury. (*Christopher A., supra,* 139 Cal.App.4th at p. 609.) Thereafter, the court heard testimony, outside the presence of the jury, from a Dr. Prakash Bhatia regarding the proper placement and disabilities for the conservatee. However, prior to any findings being made by the court, the County submitted a proposed judgment to the trial court, which included placement in a locked facility, and the conservatee's counsel agreed to

10

the judgment. There was no on-the-record consent from the conservatee to the judgment. (*Christopher A.,* at p. 609.)

On appeal, the *Christopher A.* court first determined that the appropriate standard of review was de novo. (*Id.* at p. 610.) It then concluded, "[A] stipulated judgment approved by the conservatee's attorney and adopted by the court after no formal hearing on the issues of placement, disabilities, and powers of the conservator is not a constitutionally sound safeguard against error. We reach this conclusion even though both the investigator's report and the testimony of Dr. Bhatia tended to support the conclusions in the judgment. A proposed conservatee is at risk of substantial deprivation of his or her liberty interests for *at least* a period of one year. [Citation.] To allow the conservatee's attorney to waive the right to a hearing and agree to the extent of the deprivation without the express consent of the conservatee is contrary to the principles of procedural due process. A waiver of the right to a hearing on these issues eliminates a procedural safeguard already in place. Therefore, we conclude that before accepting a stipulated judgment on placement, disabilities, and conservator powers, the court on the record must consult with the conservatee to instruct him or her on the consequences of the stipulation and obtain the conservatee's express consent to the stipulation on those issues." (*Id.* at p. 613, footnote omitted.)

Here, the principles set forth in *Christopher A.* regarding a stipulated judgment apply equally to the waiver of Daniel's rights to have a placement hearing by his counsel. Daniel's counsel informed the trial court that she did not want a placement hearing because Daniel's placement in a locked facility was the "least restrictive." It is clear

11

from the record that Daniel did not agree with the placement. There were no findings by the trial court that a locked facility was the least restrictive placement, or that Daniel expressly agreed with the statements made by his counsel. As such, as in *Christopher A.*, the portion of the judgment specifying the placement, disabilities, and powers of the conservatee violated Daniel's due process rights.

Respondent contends that this case is analogous to *Conservatorship of Tian L.* (2007) 149 Cal.App.4th 1022, 1026, a case in which the conservatee claimed on appeal that her procedural due process rights were violated by her counsel's sworn statement that she waived her right to be present and to a hearing on a reestablishment petition. Respondent's claim appears to be that *Tian L.* is applicable because Daniel waived his right to a jury trial on the determination of whether he was gravely disabled. This argument is nonsensical. *Tian L.* merely held that when an attorney signs a sworn affidavit that his or her client waives the right to a hearing and does not contest the reestablishment, the trial court should accept the sworn statement made under penalty of perjury unless there is evidence of disagreement by the client. If there is disagreement, a hearing must be held. (*Tian L., supra,* at p. 1032.) Here, there clearly was a disagreement by Daniel with his counsel as to his appropriate placement.

We also note that in *Conservatorship of John L., supra,* 48 Cal.4th 131, the court found that an express waiver by an attorney of his client's presence did not violate due process. The court held, "[A] superior court may properly find a waiver of presence and trial rights when informed by the attorney that the proposed conservatee does not want to attend the hearing to establish the LPS conservatorship and does not oppose the

12

conservatorship. Whether the proposed conservatee has knowingly and intelligently waived his presence and trial rights is a question of fact; it may not be presumed that a person found gravely disabled, or one who has been evaluated or treated for a mental disorder, is incompetent to waive such rights." (*Id.* at p. 154.) In *John L.*, the proposed conservatee had advised his counsel just prior to the hearing that he did not want to contest the conservatorship and the attorney relayed that information in waiving his presence at the hearing. (*Id*. at pp. 154-155)

Here, the record is clear that Daniel objected to his placement at Shandin Hills. The trial court would have conducted a placement hearing but for the representation on the record by Daniel's counsel that the placement was appropriate. Moreover, there was no indication from counsel that she had discussed the waiver of the placement hearing with Daniel. Accordingly, the trial court violated Daniel's procedural due process rights by finding placement in the locked facility was the least restrictive placement.

IV

DISPOSITION

We reverse the order of Daniel's commitment to a locked facility as the least restrictive placement available to him. The trial court should determine the least restrictive placement if the Public Guardian chooses to renew his conservatorship, or in the alternative, if Daniel or Daniel's counsel agrees to a placement, his consent should be evident on the record. The determination of grave disability is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI
J.

We concur:

McKINSTER
Acting P. J.

MILLER
J.

14