Filed 4/29/25  Conservatorship of the Person of J.S. CA1/5
Opinion following rehearing

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| Conservatorship of the Person of J.S. | |
| PUBLIC GUARDIAN OF SONOMA COUNTY, as Conservator, etc., <br><br> Petitioner and Respondent, <br><br> v. <br><br> J.S., <br><br> Objector and Appellant. | A171418 <br><br> (Sonoma County <br> Super. Ct. No. SPR88222) |

J.S. (appellant) appeals from the trial court's order reappointing the public guardian of Sonoma County (Public Guardian) as the conservator of his person pursuant to the Lanterman-Petris-Short Act (the Act; Welf. & Inst. Code, § 5000 et seq.).[1]  We affirm in part and reverse in part.

### BACKGROUND

A conservatorship for appellant was first established in 2015 and has been renewed annually.  During this time, appellant has been placed in either an institution for persons suffering from mental disease, a state hospital, or a skilled nursing facility.

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

In July 2024, the Public Guardian filed the instant petition seeking reappointment. The petition attached two declarations from psychiatrists. The first psychiatrist averred that, based on an examination of appellant, he suffers from schizophrenia; "cannot provide a realistic plan to provide for food, clothing, or shelter"; "has difficulty regulating his behavior outside of a locked setting"; and "continues to rely on nursing facility assistance to have basic needs met." The second psychiatrist reviewed appellant's medical records and concurred with the diagnosis and opinion of the first psychiatrist.

Appellant contested the petition, and a court trial was held.[2] The Public Guardian did not seek to submit the psychiatrist declarations as evidence at the contested hearing, but presented one witness, Dr. Phillip Grob. Appellant stipulated Dr. Grob was an expert in psychiatry.

Dr. Grob testified he met appellant for the first time earlier that day, when he spoke to him by phone, through an interpreter, for about five minutes.[3] Dr. Grob testified appellant said he was experiencing auditory hallucinations, but appellant had no insight as to the nature of his mental illness. In response to Dr. Grob's questions, appellant was "unable to articulate a plan for self-care," "was not able to tell me names of the medications he was taking, and he was not able to tell me why he was taking medication." Dr. Grob opined that appellant has "schizophrenia pervasive developmental disorder" and would not take his medication if he were no

---

[2] Following a capacity hearing, the trial court found appellant lacked capacity to elect between a jury trial and a court trial, and appellant's counsel waived his right to a jury trial. An interpreter translated the court trial proceedings for appellant.

[3] Dr. Grob also reviewed unidentified "notes" from another doctor, but the notes were not submitted into evidence and the only evidence about the substance of the other doctor's notes was Dr. Grob's testimony that he became aware appellant had a developmental disorder from the notes.

longer conserved.  Dr. Grob further opined that appellant is presently gravely disabled.

The trial court found appellant is gravely disabled as a result of a mental illness, and granted the Public Guardian's reappointment petition. The court further ordered that the least restrictive placement for appellant is a skilled nursing facility, and that appellant shall be denied the right to refuse or consent to medical treatment relating to the grave disability, the right to possess a firearm or other deadly weapon, and the privilege of possession of a motor vehicle license.

## DISCUSSION

### I.    *Legal Background*

As relevant here, the Act "provides one-year conservatorships for those 'gravely disabled as a result of a mental health disorder . . . .' (§ 5350.)" (*Conservatorship of K.P.* (2021) 11 Cal.5th 695, 703 (*K.P.*).)  A person is "gravely disabled" for purposes of the Act if, "as a result of a mental health disorder," the person "is unable to provide for their basic personal needs for food, clothing, shelter, personal safety, or necessary medical care." (§ 5008, subd. (h)(1)(A).)  "If a conservatorship is still needed at the end of the one-year term, the conservator may petition for reappointment. (§ 5361.)  Such a petition must include the opinion of two physicians, or other described professionals, 'that the conservatee is still gravely disabled as a result of mental disorder or impairment by chronic alcoholism.' (*Id.*, 1st par.) . . . A 'reestablishment hearing is conducted according to the same rules that govern the initial establishment of a conservatorship. [Citations.]  The state has the burden to prove beyond a reasonable doubt that the conservatee remains gravely disabled.' ([Citation]; see § 5350, subd. (d)(3).)" (*K.P.*, at p. 710.)

3

Upon finding a person gravely disabled as the result of a mental health disorder, the court must determine "the least restrictive alternative placement." (§ 5358, subd. (a)(1)(A); see also *Conservatorship of Amanda B.* (2007) 149 Cal.App.4th 342, 354 (*Amanda B.*) ["the trial court must determine the least restrictive alternative placement appropriate for a conservatee"].) In addition, "[c]onservatorships can involve . . . other 'disabilities' that may be imposed by the court, such as the loss of driving privileges, the right to enter contracts or vote, and the right to refuse medical and other treatments. (§ 5357.)" (*K.P.*, *supra*, 11 Cal.5th at p. 708.) "A finding of grave disability alone is not sufficient to justify the imposition of the special disabilities enumerated in section 5357. (§ 5005; [citation].) The conservatee retains the rights and privileges covered by the special disabilities unless the court, after making a finding of incapacity to support the imposition of the special disabilities, imposes those disabilities and confers the corresponding authority on the conservator. [Citation.] [¶] 'The party seeking conservatorship has the burden of producing evidence to support the disabilities sought, the placement, and the powers of the conservator, and the conservatee may produce evidence in rebuttal.' " (*Conservatorship of D.C.* (2019) 39 Cal.App.5th 487, 494.)

"An appellate court reviews the trial court's factual findings to determine if there is substantial evidence to support them, and will sustain the trial court's factual findings if there is substantial evidence to support those findings, even if there exists evidence to the contrary. [Citation.] 'In making th[e] determination [regarding substantive evidence], we view the entire record in the light most favorable to the trial court's findings. [Citations.] We must resolve all conflicts in the evidence and draw all

4

reasonable inferences in favor of the findings.' " (*Amanda B.*, *supra*, 149 Cal.App.4th at pp. 347–348.)

II. *Ability to Provide for Food, Clothing, or Shelter*

Appellant argues the Public Guardian failed to present substantial evidence that he is presently unable to provide for food, clothing, or shelter.[4] The Public Guardian, who did not file an initial response brief on appeal, presents no contrary contention.

Appellant has been continuously conserved for nearly 10 years. Dr. Grob testified appellant currently has no insight into his mental illness, does not know which medications he is taking or why, and cannot articulate a plan to care for himself outside of a conservatorship. It is undeniable that Dr. Grob's evaluation of appellant was exceedingly brief. But appellant provides no authority that this brevity *necessarily* means his " ' "expert opinion [was] based on speculation or conjecture." ' " (*David v. Hernandez* (2017) 13 Cal.App.5th 692, 698.) " '[W]hether [an expert's] testimony was substantial evidence in support of the [trier of fact's] findings must be determined by the material facts upon which [the expert's] opinion was based and by the reasons given for his opinion.' " (*Id.* at p. 705.) Dr. Grob's interview with appellant, in the context of this case, provided a sufficient basis for his opinion that appellant cannot currently provide for his food, clothing, or

---

[4] Appellant also argues there is no substantial evidence that he was unable to so provide in the past, but does not cite authority that such evidence was required to reestablish the conservatorship. We note that his many prior conservatorships are evidence that courts have found such an inability in the past.

In a supplemental brief filed at our invitation after receiving our tentative opinion, appellant contends for the first time that there is insufficient evidence to support Dr. Grob's diagnosis of his mental disorder. By failing to raise this issue in his opening brief, appellant has forfeited it. (*In re P.L.* (2024) 100 Cal.App.5th 406, 409, fn. 4.)

5

shelter. The evidence satisfies, albeit barely, the deferential substantial evidence standard.

However, we share appellant's deep concern with the Public Guardian's cavalier approach to this case. "The liberty interests at stake in a conservatorship proceeding are significant." (*Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 540.) "Conservatorships can involve confinement and other 'disabilities' that may be imposed by the court, such as the loss of driving privileges, the right to enter contracts or vote, and the right to refuse medical and other treatments." (*K.P.*, *supra*, 11 Cal.5th at p. 708.) "A person found gravely disabled also faces stigmatization" (*id*. at p. 717), including "special threats to [his or her] reputation" (*Conservatorship of Roulet* (1979) 23 Cal.3d 219, 229 (*Roulet*)).

Because of the substantial consequences of conservatorship, public entities such as the Public Guardian are tasked with ensuring that the "imposition of a conservatorship" is "only" made "in situations where it is truly necessary." (*Conservatorship of Early* (1983) 35 Cal.3d 244, 253.) For example, before seeking a conservatorship, the entity must "investigate all available alternatives to conservatorship" and may "recommend conservatorship to the court only if no suitable alternatives are available." (§ 5354, subd. (a).) And to obtain a conservatorship, the entity must "match its good intentions with proof beyond a reasonable doubt that [the person] is in need of the state's care." (*Roulet, supra*, 23 Cal.3d at pp. 225–226.)

The Public Guardian appears to have neglected its important obligations in this case. To establish that appellant should remain conserved, the Public Guardian presented only one expert witness, Dr. Grob, who met appellant for the first time on the day that he testified and spent a total of *five minutes* talking to appellant on the telephone through an interpreter.

6

We are mindful of the resource and budgetary constraints that many public entities in California face, especially in recent years. And we recognize that unexpected events, like the sudden unavailability of a witness, may arise during litigation. But these constraints or unknown events do not explain the apparent failure of the Public Guardian to thoroughly develop the record. For example, it would have taken little time and effort to put into evidence the doctor's notes that Dr. Grob reviewed. Alternatively, the Public Guardian could have sought a brief continuance so Dr. Grob could conduct a more thorough investigation of appellant's disorders and capabilities or review appellant's medical records—which also could have been put into evidence under the business records exception to the hearsay rule. (See *Conservatorship of S.A.* (2018) 25 Cal.App.5th 438, 447 ["We conclude [appellant]'s medical records, as redacted, were admissible under the business records exception to prove the acts, conditions, and events recorded therein"].) The failure of the Public Guardian to file an initial response brief in this appeal is consistent with its troubling approach of doing as little as possible in this conservatorship proceeding.

By putting minimal effort into meeting its burden of proof at trial and no initial effort at all into defending the conservatorship on appeal, the Public Guardian jeopardized the safety of both appellant and the public by placing appellant's conservatorship at risk. It also exhibited a troubling disregard for appellant's due process rights and for the purpose behind the Act. In exercising the sovereign powers of the state, the Public Guardian should remember that it serves the public, including appellant himself.

III. *Least Restrictive Placement and Special Disabilities*

We initially issued an opinion on appeal observing that, although appellant had not raised the issue in his opening brief, no substantial

7

evidence supported the trial court's findings on the least restrictive placement or special disabilities. As our initial opinion explained, no evidentiary basis was present for Dr. Grob's conclusory opinion that "the least restrictive placement for" appellant was his current placement in "a skilled nursing facility." (See *In re M.S.* (2021) 70 Cal.App.5th 728, 733 [" 'some substantive factual evidentiary basis, not speculation, must support an expert witness's opinion' "].) Indeed, Dr. Grob never explained *how* he knew about appellant's current placement, much less *what* he knew about that placement. To the extent that he may have learned about appellant's placement from the doctor's notes that he reviewed, those notes were not admitted into evidence. (See *People v. Perez* (2020) 9 Cal.5th 1, 4 ["*People v. Sanchez* (2016) 63 Cal.4th 665 [citation] held that an expert cannot relate case-specific hearsay to explain the basis for his or her opinion unless the facts are independently proven or fall within a hearsay exception"].) With respect to the special disabilities imposed by the trial court, Dr. Grob provided *no* testimony whatsoever. (See *Conservatorship of Christopher A.* (2006) 139 Cal.App.4th 604, 612 ["The party seeking conservatorship has the burden of producing evidence to support the disabilities sought, the placement, and the powers of the conservator"].)

Appellant petitioned for rehearing to raise the issues of placement and special disabilities, arguing the trial court's orders were not supported by substantial evidence and seeking remand for a new hearing. (See *Alameda County Management Employees Assn. v. Superior Court* (2011) 195 Cal.App.4th 325, 338, fn. 10 ["Generally, '[i]t is much too late to raise an issue for the first time in a petition for rehearing.' [Citation.] . . . [¶] When good cause exists, however, we may exercise our discretion to address issues first raised on rehearing."].) We requested an answer from the Public Guardian,

who filed a statement that it did not oppose granting rehearing. We granted rehearing, deemed appellant's petition to be his supplemental opening brief, and directed the Public Guardian to file a response brief. The Public Guardian filed a statement that it did not oppose appellant's supplemental opening brief.

We conclude the trial court's findings regarding the least restrictive placement and special disabilities are not supported by substantial evidence.[5] We will reverse these findings and remand the matter to the trial court for a new hearing.

## DISPOSITION

The portions of the trial court's order regarding the least restrictive placement and special disabilities are reversed and remanded for a new hearing. The order is otherwise affirmed.


SIMONS, J.


We concur.

JACKSON, P. J.
CHOU, J.



(A171418)

---

[5] Because of this conclusion, we need not and do not decide whether appellant's due process rights were violated, as appellant's supplemental opening brief also argues.

9