Filed 1/22/26  Conservatorship of C.S. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| Conservatorship of the Person of C.S. | |
| RIVERSIDE COUNTY PUBLIC GUARDIAN, | D087144 |
| Petitioner  and Respondent, | |
| v. | (Super. Ct. No. PRRI2402455) |
| C.S., | |
| Objector and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Samuel Diaz, Jr., Judge.  Affirmed in part, reversed in part, and remanded with instructions.

Suzanne M. Davidson, under appointment by the Court of Appeal, for Objector and Appellant.

Stacy Keffer, Office of the County Counsel; Smith Law Offices, Douglas C. Smith and Julian V. Lee, for Petitioner and Respondent.

After determining C.S.'s mental health rendered her "gravely disabled" under the Lanterman-Petris-Short Act (the LPS Act) (Welf. & Inst. Code, [1] § 5000 et seq.), the trial court imposed a one-year conservatorship over her and further ordered, consistent with the parties' stipulation, that the least restrictive level of placement was a closed, locked facility. C.S. contends that her due process rights were violated because she did not consent to the least restrictive placement or the imposed disabilities of the conservatorship judgment.[2] We agree. Accordingly, we reverse the portion of the judgment determining placement and imposing disabilities and remand for the court to verify C.S.'s consent to the terms of the conservatorship judgment on the record or, alternatively, to hold a hearing on these matters.

## FACTUAL AND PROCEDURAL BACKGROUND

C.S. is an elderly woman with a history of schizophrenia and other mental health disorders. Over the last several years, C.S. has been admitted to over 20 hospitals for matters related to her mental health, demonstrated an inability to voluntarily take prescribed medications in an outpatient setting, and failed to maintain consistent shelter when not at a hospital or treatment program.

In September 2024, the Riverside County Public Guardian (the County) petitioned for it to be appointed C.S.'s permanent conservator. The County asserted that C.S., as a result of her mental health disorder, could not provide for her basic needs and was unwilling to accept treatment.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] C.S. does not challenge the jury's finding of "grave disability."

Consequently, because C.S. was allegedly "gravely disabled," the County asserted that a permanent conservatorship was necessitated under the LPS Act.

C.S. received notice of the hearing for an LPS conservatorship and sought a jury trial.[3] Ultimately, after trial testimony from the County's expert and C.S., the jury returned a verdict finding that C.S. was "presently gravely disabled due to a mental disorder."

After the jury was discharged and a "brief recess," the trial court recalled the matter. The court noted that C.S. was "not present" and asked defense counsel: "Counsel waive[s] [C.S.'s] appearance?" Defense counsel responded affirmatively. The trial court then granted the petition for appointment of a permanent conservatorship, finding pursuant to the jury verdict that C.S. was "gravely disabled beyond a reasonable doubt."

While C.S. was still absent from the court room, the trial court immediately asked defense counsel for "any recommendations." Defense counsel responded, "I would offer the following findings to the Court; that [C.S.] is able to express a desire to vote, placement [in a closed, locked facility] is appropriate and least restrictive, and [C.S.] would reserve on the issue of psychotropic medications." When the County did not object, the trial court indicated—while C.S. remained absent—that it would sign the order "right now" and directed defense counsel to inform C.S. of her right to appeal.

A short pause in the proceedings occurred. When the trial court came back on the record, it noted that C.S. was "now present." The trial court

---

[3]     Pending the outcome of the petition for permanent conservatorship, C.S. was placed under a temporary conservatorship. At the time of the hearing on the permanent conservatorship, C.S. was housed in a closed, locked facility.

informed C.S. of her right to an appeal, directing her to her attorney for further discussion of her appeal rights. The proceeding concluded without any further comment from, or inquiry directed to, C.S.

The trial court thereafter entered a judgment for a one-year conservatorship. The judgment, consistent with the stipulation, determined that C.S.'s present confinement, in a closed locked facility, was the "least restrictive and most suitable facility"; imposed disabilities, including that C.S. did not have the right to refuse medical treatment related to the grave disability but retained the right to vote; and granted powers to the conservator.

DISCUSSION

On appeal, C.S. asserts that the trial court erred by failing to obtain her consent during the "placement and disabilities" hearing. According to C.S., by accepting defense counsel's recommended placement and disabilities without a formal hearing and without obtaining her consent to the findings of the stipulation, the trial court acted contrary to this court's decision in *Conservatorship of Christopher A.* (2006) 139 Cal.App.4th 604, 612 (*Christopher A.*) and violated her due process rights. We agree.

Whether the trial court afforded C.S. due process by imposing placement and disabilities consistent with the attorneys' stipulation and without C.S.'s consent raises a question of law. We review such questions de novo. (See *Conservatorship of Tian L.* (2007) 149 Cal.App.4th 1022, 1029.)

"The LPS Act governs the involuntary detention, evaluation, and treatment of persons who, as a result of mental disorder, are . . . gravely disabled." (*Conservatorship of John L.* (2010) 48 Cal.4th 131, 142 (*John L.*).) The LPS Act authorizes a trial court to appoint a conservator for a person who is found to be gravely disabled (§ 5350 et seq.) so that he or she may

4

obtain "treatment, supervision, and placement," (§ 5350.1). Once an LPS conservatorship is in place, it automatically terminates after one year, but reappointment of the conservator may be sought by petition. (§ 5361.)

Because of the significant liberty interests at stake in an LPS conservatorship, multiple procedural safeguards exist at all stages of the adjudication. (See *John L., supra*, 48 Cal.4th at pp. 151–52.) Relevant here is the placement, disabilities, and conservator powers determination, which is made separately from, and *after*, the determination that a person is gravely disabled. (See *Conservatorship of Walker* (1989) 206 Cal.App.3d 1572, 1578 (*Walker*.) ["A conservatee does not forfeit any legal right nor suffer legal disability by reason of the LPS commitment alone. (§ 5005.)"]; *Christopher A., supra*, 139 Cal.App.4th at p. 612.) At this stage, the conservatee likewise has a right to due process before any disability or placement may be imposed. (*Ibid.*; see *K.G. v. Meredith* (2012) 204 Cal.App.4th 164, 182 (*K.G.*) [recognizing conservatee has a right to due process before disabilities may be imposed].)

Specifically, the conservatee has a right to a separate hearing or jury trial, wherein the trial court "determine[s] the duties and powers of the conservator, the disabilities imposed on the conservatee, and the level of placement appropriate for the conservatee." (*Christopher A., supra*, 139 Cal.App.4th at p. 612; see also §§ 5357 & 5358.) If the judgment is by stipulation, due process requires the proposed conservatee's consent to the terms, either by personal, in-person consent at the hearing or by the conservatee's counsel who has verified to the court on the record that the conservatee actually consents to the terms of the stipulation. (*K.G., supra*, 204 Cal.App.4th at p. 182.) The party seeking the conservatorship bears the burden of showing that the proposed least restrictive placement and

5

disabilities are necessary to accomplish the purpose of the LPS conservatorship. (*Christopher A.,* at p. 612, fn. 5.)

In this matter, it is evident from the record that C.S. was not afforded due process at the placement and disabilities stage of the proceedings. At no point during this portion of the proceedings did the trial court verify C.S.'s express consent to the terms of the stipulated judgment, either by C.S. herself or by verification of her consent through defense counsel. Instead, in C.S.'s absence, the trial court simply accepted the stipulated placement and imposition of disabilities that only the attorneys had agreed upon. In doing so, the court effectively allowed defense counsel to waive C.S.'s right to a hearing on the issue of disabilities, placement, and conservator powers. Even when C.S. returned to the courtroom, the court did not take the opportunity to inform her of the consequences of the stipulated judgment, nor to obtain her consent.

On appeal, both parties discuss this court's decision in *Christopher A.* to support their respective positions. In that matter, as here, the trial court accepted a stipulated judgment on the issues of placement, disabilities, and conservator powers without obtaining the conservatee's consent. (*Christopher A., supra,* 139 Cal.App.4th at p. 613.) A panel of our court reversed, despite evidence on the record to support the judgment, because failure to obtain such consent violated the conservatee's due process rights. (*Ibid.*) While factual dissimilarities certainly exist between the present case and *Christopher A.,* this matter and *Christopher A.* are the same in all material factual regards: mainly, that the conservatorship judgment was entered on the basis of a stipulated agreement of *only* counsel. The factual differences the County highlights—that C.S. left the courtroom and made no attempt to discuss the stipulated judgment, unlike the conservatee in

6

*Christopher A.* who remained in the courtroom and sought to question the court—do not dictate a different outcome.

The County further asserts that because C.S. testified during the grave disability portion of the hearing, she had the "equivalent of a formal hearing" on the matter of placement and disabilities, such that any deprivation of due process was cured. Putting aside that the County cites no authority for this proposition, the County ignores that the grave disabilities portion of the proceedings is tailored to a determination of whether a proposed conservatee is unable to provide for his or her basic needs because of a mental disorder. The fact that a proposed conservatee is gravely disabled does "not by itself satisfy the evidentiary requirements for the imposition of special disabilities." (*Walker, supra*, 206 Cal.App.3d at p. 1578.) While it is *possible* C.S. would have had nothing to add to what she had already testified to, we cannot know because she was never given the opportunity. Consequently, C.S.'s prior testimony does not render harmless the lack of a hearing or consent with respect to the least restrictive placement and disabilities determination.

We likewise reject the County's claim that C.S. waived her due process rights because she voluntarily chose to leave the courtroom. That C.S. briefly left the proceedings does not amount to an intentional relinquishment of a known right. (See *Cowan v. Superior Court* (1996) 14 Cal.4th 367, 371 [waiver is the " 'intentional relinquishment or abandonment of a known right' "].)

In sum, the determination of least restrictive placement, imposition of disabilities, and designation of conservator powers implicates a conservatee's personal liberty interest. (See *Christopher A., supra*, 139 Cal.App.4th at pp. 611–612; *K.G., supra*, 204 Cal.App.4th at p. 182.) Consequently, when a stipulated judgment is entered in these respects, due process requires the

7

conservatee's consent to, and consultation on, the agreed upon terms. (*Christopher A., supra*, 139 Cal.App.4th at p. 613.)  Because that consent was not obtained in this case and C.S. was not otherwise provided a hearing, entry of the judgment with respect to least restrictive placement and disabilities violated due process.

DISPOSITION

The portion of the judgment determining least restrictive placement and imposing disabilities is reversed.  In all other respects, the judgment is affirmed.  This matter is remanded for further proceedings consistent with this opinion.


BUCHANAN, J.

WE CONCUR:


O'ROURKE, Acting P. J.


DATO, J.