[Civ. No. 24639. Third Dist. May 13, 1986.]

Conservatorship of the Person and Estate of
VICTOR FRANK BENVENUTO.
BARBARA KAHL, as Conservator, etc., Petitioner and Respondent, v.
VICTOR FRANK BENVENUTO, Objector and Appellant.

**COUNSEL**

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and Charles M. Bonneau, Jr., for Objector and Appellant.

Richard K. Denhalter, County Counsel, and Joan R. Dowis, Deputy County Counsel, for Petitioner and Respondent.

**OPINION**

**BLEASE, Acting P. J.**—Appellant Victor F. Benvenuto seeks a reversal of an order reappointing a conservator of his person and estate under the provisions of the Lanterman-Petris-Short Act (LPS), Welfare and Institutions Code section 5350 et seq.).[1] He contends the trial court erred in finding him "still gravely disabled," the predicate for reestablishing the conservatorship. He also contends the trial court erred in failing to inform him of his right to jury trial on the issue whether he is gravely disabled. Both contentions have merit and we reverse the judgment (order of reappointment) on both grounds.

### FACTS AND PROCEDURAL BACKGROUND

On November 30, 1983, Barbara Kahl, Public Guardian of Placer County (conservator), was appointed by the superior court as LPS conservator of Benvenuto's estate and person based upon a finding that he was "gravely

---

[1]Unless otherwise specified, all further statutory references are to the Welfare and Institutions Code.

disabled as a result of a mental disorder." The conservator was granted the power to place Benvenuto in an institution. He was placed in a mental health facility. (§ 5358.)

On November 1, 1984, the conservator filed a petition for reappointment for a succeeding one-year period. On November 16 the conservator set the matter for hearing on November 28. When the matter came on for hearing it was continued for one day at the conservator's request to permit a prospective witness, Dr. Robert Smith, to examine Benvenuto.

On November 29, the hearing was conducted. Smith testified that Benvenuto suffers from schizophrenia, which is in partial remission because of the medication, Prolixin, an antipsychotic drug. Benvenuto has no overt symptoms but still displays two residual symptoms; he shows some depression and has the feeling that people don't like him. Because of the medication Benvenuto presently has the ability to provide for his food, shelter, and clothing needs. It is probable that if he continues with the treatment program he would continue not to be gravely disabled. It is possible that he would remain stable or improve if taken off conservatorship, assuming that he complies with the treatment program. However, in Smith's opinion, if Benvenuto went to live with his mother, as proposed, he would be likely to regress and become gravely disabled in a fairly short period of time.

Benvenuto testified at the hearing that, if released from conservatorship, he intended to live with his mother. She had agreed to this arrangement. In his view his prior problems stemmed from the termination of his Supplemental Security Income (SSI) benefit payments. He was evicted because he couldn't pay the rent. He got in trouble and went to jail to have a roof over his head.

Kahl, the conservator, testified that Benvenuto's appeal of the SSI termination had been successful, albeit he had been denied funds for almost a year before the matter could be rectified. He would continue to receive SSI benefits if the conservatorship were terminated.

At the conclusion of the hearing the trial court ruled that the petition for reappointment of the conservator be granted. Benvenuto filed a notice of appeal the same day.

DISCUSSION

I

Benvenuto contends the trial court erred in finding him to be "still gravely disabled" under section 5361. He argues that his case is analogous

to *Conservatorship of Murphy* (1982) 134 Cal.App.3d 15 [184 Cal.Rptr. 363]. In *Murphy,* a conservatee had been placed under LPS conservatorship for alcoholism. At the hearing on the petition for reappointment the medical witnesses opined that if the conservatorship were terminated he would once again indulge in alcohol and become greatly disabled. This court held that prospect was *"no evidence that Murphy is gravely disabled."* (Italics in original.) (*Id.,* at p. 18.) Benvenuto argues the evidence that he will cease taking his medication and relapse into grave disability is of the same ilk. We agree.

An LPS conservatorship may be imposed when the conservatee is "gravely disabled as a result of mental disorder or impairment by chronic alcoholism." (§ 5350.) The applicable statutory standard for "gravely disabled" as a result of a mental disorder is "unable to provide for his basic personal needs for food, clothing, or shelter." (§ 5008, subd. (h)(2)(iii).) This is the *standard that applied in Murphy, supra.* The circumstances here mirror those in the *Murphy* case. In *Murphy* the conservatee was not presently gravely disabled but medical witnesses thought he would likely soon become so because of his propensity to take the drug ethanol. Here Benvenuto is not presently gravely disabled but medical witnesses thought he would likely soon become so because of his propensity not to take the drug Prolixin. We discern no principled basis for distinction between these circumstances.

As we held in *Murphy,* the pivotal issue is whether Benvenuto was "presently" gravely disabled and the evidence demonstrates that he was not.[2] Accordingly, the order granting the petition must be overturned. While that conclusion is a sufficient basis for resolution of this appeal, we will also discuss Benvenuto's alternative contention since it presents issues of continuing public importance in the administration of the LPS.

## II

### A.

The discussion requires some additional statutory framework. The Lanterman-Petris-Short Act was enacted, inter alia, to end the "inappropriate, indefinite, and involuntary commitment" of mentally and developmentally disabled persons (§ 5001, subd. (a)). As related, under the LPS a conservator may be appointed for any person who is gravely disabled as a result of

---

[2] If LPS conservatorship may be reestablished because of a perceived likelihood of future relapse, many conservatees who would not relapse will be deprived of liberty based on probabilistic pessimism. This cost is unwarranted in view of the statutory procedures available to rapidly invoke LPS conservatorship if required. (See *Conservatorship of Early* (1983) 35 Cal.3d 244, 254 [197 Cal.Rptr. 539, 673 P.2d 209].)

mental disorder. (§ 5350.)[3] "This is a special kind of conservatorship and is generally referred to as an 'LPS Conservatorship.' An LPS conservator has the same powers as a conservator appointed pursuant to the terms of the Probate Code. [§ 5357] In addition, an LPS conservator may, if the court so orders, place his conservatee in one of the treatment facilities specified by [§ 5358[4]]." (Harrington, *Commitment Under the LPS, supra,* at p. 67.)

The procedure for establishing, administering and terminating an LPS conservatorship is the same as for a conservatorship established under the Probate Code except as otherwise provided in the LPS. (§ 5350.) Because of the power of involuntary commitment over an LPS conservatee, there is a difference in termination procedures. An ordinary conservatorship continues until terminated (albeit subject to periodic review); an LPS conservatorship is automatically terminated at the end of a one-year period unless affirmative steps are taken to extend it for another year. (Cf. § 5361 with Prob. Code, §§ 1850, 1860.)

To avert automatic termination of an LPS conservatorship a petition to reestablish the conservatorship must be filed. "If the conservator does not petition to reestablish conservatorship at or before the termination of the one-year period, the court shall issue a decree terminating conservatorship." (§ 5362.) At least 60 days prior to the end of the one-year period, the superior court clerk must send a written notice of the impending termination to the various interested parties. (*Ibid.*) The text of the required notice, inter alia, informs the conservatee that if a petition for reappointment is filed he has the right to a jury trial.[5] (§ 5362.) If the conservator determines that

---

[3]An overview of the LPS conservatorship scheme is provided in *Conservatorship of Early, supra,* 35 Cal.3d 244, 247-248. See also Harrington, *Involuntary Commitment of Mentally Disordered Persons Under the Lanterman-Petris-Short Act* (1973) 8 Lincoln L.Rev. 55.

[4]Section 5358, subdivision (a) says: "When ordered by the court after the hearing required by this section, a conservator appointed pursuant to this chapter shall place his or her conservatee in the least restrictive alternative placement, as designated by the court. Such placement may include a medical, psychiatric, nursing, or other state-licensed facility, or a state hospital, county hospital, hospital operated by the Regents of the University of California, a United States government hospital, or other nonmedical facility approved by the State Department of Mental Health or an agency accredited by the State Department of Mental Health, or in addition to any of the foregoing, in cases of chronic alcoholism, to a county alcoholic treatment center."

[5]Section 5362 sets forth the text of the notice it requires as follows: "The one-year conservatorship established for _____ pursuant to Welfare and Institutions Code Section _____ on _____ will terminate on _____. If the conservator, _____, wishes to reestablish conservatorship for another year he or she must petition the court by _____. Subject to a request for a court hearing by jury trial the judge may, on his or her own motion, accept or reject the conservator's petition.

"If the conservator petitions to reestablish conservatorship the conservatee, the professional person in charge of the facility in which he or she resides, the conservatee's attorney, and,

conservatorship is still required she petitions the superior court for her reappointment for a succeeding one-year period. (§ 5361.) The court must appoint counsel for the conservatee within five days after the date of the petition. (§ 5365.) Section 5365 says: "A hearing shall be held on all petitions under this chapter within 30 days of the date of the petition." However, section 5362, subdivision (b), which specifically refers to petitions for reappointment says: "Subject to a request for a court hearing or jury trial, the judge may, on his or her own motion, accept or reject the conservator's petition." The conservatee has the right to demand a court or jury trial on the issue whether he is gravely disabled arising on a contested petition for reappointment. (§ 5350, subd. (d).) The demand may be made within five days following the hearing on the petition. (*Ibid.*)

The questions raised by Benvenuto concern the obligations of the court to advise an LPS conservatee of the right to jury trial in connection with a petition for reappointment of a conservator.

### B.

■ Preliminarily, we note the conservator's contention that Benvenuto cannot raise the issue of his right to jury trial advisement. The conservator argues Benvenuto has waived the point by failing to demand a jury trial within five days after the hearing, choosing instead to file an immediate appeal. The argument's persuasiveness depends entirely on the implied premise that the grounds of appeal are known to the appellant when the notice of appeal is filed. In fact that is often not true. It would be an analytical "Catch-22" to presume Benvenuto knew he had the very right of which he complains he was not informed. "'Absent an understanding by the patient of the nature of his detention and of his rights, it is difficult to perceive how he could knowingly decide whether or not to exercise them.' [Citation.]" (*In re Hop* (1981) 29 Cal.3d 82, 91 [171 Cal.Rptr. 721, 623 P.2d 282]; see also *In re Roger S.* (1977) 19 Cal.3d 921, 938, fn. 10 [141 Cal.Rptr. 298, 569 P.2d 1286].)

Moreover, Benvenuto's situation is no different than if he had waited to file his notice of appeal until after the five-day period had elapsed. It would then be urged that he waived by failing to make a timely demand. Accepting such a theory of constructive waiver leaves the problem of the right of jury

---

if the conservator is a private party, the county mental health director and the county officer providing conservatorship investigation shall be notified. If any of them request it, there shall be a court hearing or a jury trial, whichever is requested, on the issue of whether the conservatee is still gravely disabled and in need of conservatorship. If the private conservator does not petition for reappointment, the county officer providing conservatorship investigation may recommend another conservator. Such a petition shall be considered a petition for reappointment as conservator."

trial advisement in limbo. Colorable claims of improper administration of a statutory scheme such as the LPS must not be swept under such a rug. (Cf. *Diaz* v. *Quitoriano* (1969) 268 Cal.App.2d 807 [74 Cal.Rptr. 358].) Accordingly, we turn to the merits of Benvenuto's claim.

## C.

█ The right to a jury trial upon the establishment of conservatorship is fundamental to the protections afforded by the LPS. (See *Conservatorship of Roulet* (1979) 23 Cal.3d 219 [152 Cal.Rptr. 425, 590 P.2d 1]; cf. *People* v. *Colvin* (1981) 114 Cal.App.3d 614 [171 Cal.Rptr. 32]; *People* v. *Feagley* (1975) 14 Cal.3d 338 [121 Cal.Rptr. 509, 535 P.2d 373].) As related, that right is expressly extended to the reestablishment of an LPS conservatorship. (§§ 5362, 5350, subd. (d).) Here, Benvenuto was not given the written notice required by section 5362. A manifest function of that notice is to inform the conservatee that if a petition to reestablish the conservatorship is filed he has the right to demand a jury trial. █ The conservator suggests that since Benvenuto appeared at a hearing with his counsel the failure to send the written notice of jury trial right required by section 5362 should be deemed harmless error. We disagree.

The result of accepting this elliptical suggestion is that failure to comply with section 5362 would invariably be harmless error. The unstated claim implicit in the conservator's argument is that it should be presumed that counsel informed Benvenuto of his right to jury trial. But if a petition for reappointment is filed, counsel must always be appointed for the conservatee. Therefore, by the conservator's logic, failure to send the section 5362 notice would invariably be cured in the ordinary course of events.

Implicit in the statutory requirement for written notice of the right to jury trial is the conclusion that the mandatory appointment of counsel is insufficient to insure that the fundamental right to jury trial will be brought home to the LPS conservatee. █ █ █ █ Of course, it is a duty of counsel to inform the conservatee of his procedural rights in the impending proceedings.[6] However, given the gravity of the matter in issue it may not be presumed on a silent record that counsel has accomplished this task.

---

[6]Implicit in the mandatory appointment of counsel is the duty of counsel to perform in an effective and professional manner. Moreover, the duties of counsel for the conservatee must at least encompass those set out in Probate Code section 1851, subdivision (a) for the investigator appointed in the less onerous Probate Code conservatorship periodic review proceedings. Indeed, if a decision is made not to oppose reappointment of the LPS conservator, i.e., to forego a hearing under section 5362, subdivision (b), the attorney should tender a report in writing to the court equivalent to that required of the investigator under Probate Code section 1851, subdivision (b). (See *Developments in the Law—Civil Commitment of the Mentally Ill* (1974) 87 Harv. L.Rev. 1190, 1288-1291.)

Civil commitment in a mental hospital is as threatening to a "person's liberty and dignity on as massive a scale as that traditionally associated with criminal prosecutions." (*Conservatorship of Roulet, supra,* 23 Cal.3d at p. 223; see also *People* v. *Burnick* (1975) 14 Cal.3d 306, 319-322 [121 Cal.Rptr. 488, 535 P.2d 352].) ▓ "An involuntary civil commitment in a . . . hospital for the mentally ill is a commitment which requires the application of criminal due process standards." (*In re Hop, supra,* 29 Cal.3d at p. 89, citing to *Conservatorship of Roulet, supra,* 23 Cal.3d at pp. 224-225.) ▓ Recognizing the drastic nature of a commitment proceeding, in *Conservatorship of Roulet, supra,* 23 Cal.3d at p. 225, the Supreme Court admonished that "[t]he law must still strive to make certain that only those truly unable to take care of themselves are being assigned conservators under the LPS Act and committed to mental hospitals against their will." (*Ibid.*) Noting that a finding of grave disability may result in serious deprivation of personal liberty (p. 228), the *Roulet* court held that the due process clause of the California Constitution requires that proof beyond a reasonable doubt and jury unanimity be applied to conservatorship proceedings under the LPS Act. (*Id.,* at p. 235.)

Both *Conservatorship of Chambers* (1977) 71 Cal.App.3d 277 [139 Cal.Rptr. 357] and *Conservatorship of Maldonado* (1985) 173 Cal.App.3d 144 [218 Cal.Rptr. 797] hold that *Roulet* does not compel a constitutional importation of the criminal law standard of an on-the-record personal waiver of the right to jury trial into LPS proceedings. (An issue not presented here and upon which we express no view.) However, in both cases the conservatee was present when counsel waived jury trial on the record. There is no on-the-record waiver of jury trial by counsel here. Moreover, *Chambers* suggested that the trial court might have had an affirmative *statutory* obligation to elicit a personal waiver of jury trial under the newly enacted former Probate Code section 1754.1. (Stats. 1976, ch. 1357, § 27.) (See *Chambers,* 71 Cal.App.3d at pp. 286-287 and 288-289, conc. opn. of Kane, J.)

Former Probate Code section 1754.1 required that the trial court explicitly inform the conservatee prior to imposing a conservatorship that he has the right to have the matter tried by jury. This requirement is carried forward in Probate Code section 1828. As noted, the Probate Code conservatorship procedural devices are incorporated by reference into the LPS procedures except as expressly supplanted. Nothing in the LPS conflicts with the borrowing of Probate Code section 1828. ▓ Thus the advisement of right to jury trial requirement is applicable in proceedings to establish an LPS conservatorship. It is also applicable in proceedings to reestablish an LPS conservatorship. ▓ The right to jury trial is no less important in such a proceeding that at the inception of the conservatorship. In all such LPS proceedings the conservatee is represented by counsel. (§ 5365.) This is

another indication that it is inappropriate to presume that counsel will inform the conservatee of this right.

The reason for the requirement of these formal advisements of the right to jury trial on the record is to safeguard against the loss of the fundamental right to jury trial whether by inadvertence, neglect, or paternalism. In this case no written notice of the right to jury trial required by section 5362 was given. We do not view this error as harmless on the ground it was cured by the appointment of counsel for Benvenuto. There is no indication in the record that Benvenuto was orally advised by the trial court of his right to demand a trial by jury. This compounds the antecedent error. We hold that failure to inform Benvenuto of his right to jury trial requires that the order granting the petition be overturned.

The order reappointing the conservator is reversed.

Carr, J., and Sims, J., concurred.