**In the Matter of the GUARDIANSHIP OF Mary Lou RENZ, an Incapacitated Person,**

**Mary Lou Renz, Petitioner and Appellant.**

**Civ. No. 930111.**

Supreme Court of North Dakota.

Oct. 26, 1993.

Todd D. Kranda of Kelsch, Kelsch, Ruff & Austin, Mandan, for petitioner and appellant.

LaRoy Baird III, Bismarck, for William Chaussee, Guardian.

LEVINE, Justice.

Mary Lou Renz appeals from an order denying her petition to terminate her guardianship and granting her guardian and conservator's petition for authority to sell Renz's home and automobile. As we are satisfied with the trial court's prudent approach to guardianship in this case and we find no clear error in the trial court's findings on guardianship or abuse of discretion in its order authorizing the sale of Renz's home and automobile, we affirm.

Renz has a long history of alcohol abuse and is an admitted alcoholic. She began drinking following the death of her husband in 1973 and since that time, she has undergone inpatient treatment for alcoholism at the North Dakota State Hospital fourteen times and at the Heartview Foundation seven times. Following each course of treatment, she eventually returned to her home. After a particularly serious incident of alcohol abuse in December 1991, the Heartview Foundation refused to admit Renz again unless a guardian was appointed for her.

Subsequently, in late 1991, William Chaussee, the Burleigh County Public Administrator, petitioned the trial court for guardianship. In February 1992, the trial court, finding that Renz was unable to provide for her personal care or perform necessary daily activities due to chronic alcoholism, granted limited guardianship over Renz's legal and financial affairs and full guardianship over her living arrangements.

The next month, after Renz was admitted to the North Dakota State Hospital following

another incident of alcohol abuse, Chaussee petitioned the court for modification of the guardianship. The trial court then issued an amended order granting Chaussee authority to place Renz in a structured care facility as recommended by the State Hospital and control over Renz's assets to pay for such care (the court required its approval prior to the sale of Renz's home or automobile).

In June 1992, the court again modified Chaussee's guardianship to include conservatorship and full authority over Renz's place of residence, financial matters, and medical treatment; and limited authority over Renz's legal matters, vocation, and education. Renz did not appeal this order or any of the court's prior orders.

In September 1992, Chaussee petitioned the trial court for authority to sell Renz's home and automobile. Renz then petitioned the court for termination of the guardianship, based on her recent sobriety. The trial court denied Renz's petition for termination and granted Chaussee's petition for authority to sell. Renz appealed.

■ Renz first argues that although she is an alcoholic with a long history of unsuccessful treatment for alcoholism, she presently is sober and thus, no longer is an incapacitated person. Therefore, she argues, the trial court "abused its discretion" by finding her incapacitated. Renz misstates the appropriate standard of review. We examine the trial court's findings on guardianship under a clearly erroneous standard. NDRCivP 52(a); *In re Braaten,* 502 N.W.2d 512 (N.D.1993). A finding of fact is clearly erroneous "if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, the reviewing court, on the entire evidence, is

left with a definite and firm conviction that a mistake has been made." *Swanston v. Swanston,* 502 N.W.2d 506, 508 (N.D.1993). Renz's argument is twofold: that she presently is capable and that a court may not base a finding of incapacity on the perceived likelihood of a future relapse. We examine each aspect in turn.

The trial court found that Renz is "a chronic, relapse-prone, alcoholic" and "requires a great deal of support and structure to maintain sobriety[, which] will continue to be a struggle for her." The court found that since she has lived at the Chateau, a structured care facility, Renz has remained sober and regularly attends Alcoholics Anonymous meetings. We agree with the trial court that the fact that Renz has maintained sobriety while in a structured setting does not in itself imply that she no longer is an incapacitated person. Renz's argument makes an unfounded leap from the fact that she may be sober while she is in a structured facility and under a guardian's care to the assertion that she is capable of maintaining her sobriety without the structure and support furnished under a guardianship. We conclude that the trial court's finding that Renz remains incapacitated is supported by the evidence, and we are not convinced that the court made a mistake in its finding.

Renz also argues that the trial court incorrectly based its finding of incapacity on the likelihood that Renz would relapse into alcohol abuse. Renz cites several cases in support of this contention, only two of which we find arguably applicable to the case at hand. In *Estate of Murphy,* 134 Cal.App.3d 15, 184 Cal.Rptr. 363 (1982), the court held that a trial court may not find an alcoholic residing in a care facility and currently able to manage his own affairs "gravely disabled" [1] based

---

1. California's Lanterman–Petris–Short Act, Cal. Welf. & Inst. Code §§ 5000–5466 (West 1984 & Supp.1993), allows appointment of a conservator where the proposed conservatee is "gravely disabled," which it defines as "unable to provide for his or her basic personal needs for food, clothing, or shelter," due to mental disorder or chronic alcoholism. *Id.* §§ 5000(h)(1)(A), 5008(h)(2) (Supp.1993). The petitioner for conservatorship must prove beyond a reasonable doubt that the proposed conservatee is gravely disabled. *Estate of Murphy,* 134 Cal.App.3d 15, 184 Cal.Rptr. 363 (1982). An LPS conservatorship automatically

terminates after one year, unless the conservator petitions to reestablish the conservatorship subject to the same burden as in the initial appointment. Cal.Welf. & Inst. Code §§ 5361, 5362. North Dakota has no comparable statute. However, in oral argument, Renz suggested that the guardian carries the burden of proof in a termination proceeding. Renz relies on NDCC § 30.1–28–07(3), which states:

"Before removing a guardian, accepting the resignation of a guardian, or on finding that the ward is no longer incapacitated and order-

only on the likelihood that, were the court to terminate the conservatorship, he would begin drinking again. *Murphy* is distinguishable from the case at hand in two respects. First, as discussed above, we do not believe Renz presently is capable. Second, there is no indication in *Murphy*, as there is here, that the conservatee's sobriety was dependent on his placement in a care facility. In *In re Benevenuto*, 180 Cal.App.3d 1030, 226 Cal.Rptr. 33 (1986), the court applied *Murphy* to hold that a schizophrenic was not gravely disabled where he currently was able to manage his own affairs, despite evidence that if released from the mental health facility where he resided, he would stop taking his medication and become gravely disabled. Again, *Benevenuto* is distinguishable because Renz presently remains incapacitated. In addition, we note that the California courts may be moving away from *Benevenuto* and *Murphy*. *See In re Walker*, 206 Cal.App.3d 1572, 254 Cal.Rptr. 552 (1989) [affirming trial court's finding that delusional conservatee presently was gravely disabled based not on future likelihood that conservatee would stop taking medication but on conservatee's present incomprehension of his mental illness]. We also note that none of the cases cited by Renz involves a ward with an extensive history of unsuccessful alcoholism treatment, as does the case before us. Finally, we consider prognostic evidence in other proceedings which bear on an individual's rights. *See, e.g., Steckler v. Steckler*, 492 N.W.2d 76, 81 (N.D.1992) [stating in a termination of parental rights case that where "there exists a history of visitation violations and allegations of abuse, the court may consider what happened [in the past] as relevant evidence of what might occur in the future. It need not await a more tragic event to take action"]. Accordingly, we pay no heed to the California precedents because they pay no heed to either historical or prognostic evidence. We conclude that the trial court's findings on

Renz's proclivity for alcoholism and her need for structure and support are not mistaken.

■ Renz's second argument is that the trial court "abused its discretion" in finding that no less restrictive form of intervention or alternative resource plan was available to allow Renz to return to her home. Implicit in this argument is that the trial court abused its discretion in authorizing the sale of Renz's home and automobile. Again, we examine the trial court's findings on guardianship under a clearly erroneous standard. In *Braaten, supra* at 517, we discussed North Dakota's "legislative mandate to maximize the autonomy of an incapacitated person by the least restrictive appointment of limited guardians." We believe the trial court's initial order of a limited guardianship and later orders incrementally broadening the guardian's authority as proved necessary conform to the circumspect approach required by North Dakota law. Here, the trial court found that "[i]t is not reasonable to assume that Mary Lou Renz will be able to live independently again" and that "there is no combination of services available to her [in her home] which would provide the required level of structure for her." The evidence shows that Renz was unable to care for her personal cleanliness or that of her home, even with support services, when she lived independently. Several witnesses testified as to the unsanitary condition of Renz's home and her failure to attend to her incontinence. We believe the court's findings are supported by the record and we are not left with a definite and firm conviction that a mistake has been made. Therefore, we conclude that the findings are not clearly erroneous.

■ We examine the trial court's authorization of a conservator's sale of a protected person's property under an abuse of discretion standard. *In re Kinney*, 495 N.W.2d 69

ing the guardianship terminated, the court, *following the same procedures to safeguard the rights of the ward as apply to a petition for appointment of a guardian,* may send a visitor to the residence of the present guardian and to the place where the ward resides or is detained, to observe conditions and report in writing to the court." (Emphasis added.)

We decline to decide which party has the burden of proof in a termination of guardianship proceeding. Instead, we restrict our opinion to those issues properly raised and briefed by the parties.

(N.D.1993). A trial court abuses its discretion when it acts in an arbitrary, unreasonable or unconscionable manner. *Id.* A trial court acts in an arbitrary, unreasonable or unconscionable manner

> "when the exercise of discretion is not ... 'the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together with the purpose of achieving a reasoned and reasonable determination.'" *Id.* at 71 (quoting *Matter of Altshuler,* 171 Wis.2d 1, 490 N.W.2d 1, 3 (1992) (quoting *Hartung v. Hartung,* 102 Wis.2d 58, 306 N.W.2d 16, 20 (1981))).

Here, the trial court found that Renz required a structured setting to maintain sobriety and the cost of an adequately structured setting quickly was depleting Renz's resources, necessitating the sale of Renz's home and automobile. In earlier orders, the trial court recognized the general duty of the guardian and conservator to provide for the ward's care while cautiously limiting the extent of the guardian and conservator's authority. Given the court's findings of fact, statements of the law, and reasonable determination, we find no abuse of discretion in its order authorizing the sale of Renz's home and automobile.

The portion of the trial court's order denying Renz's petition for termination of the guardianship is not clearly erroneous and the portion authorizing the sale of Renz's home and automobile is not an abuse of discretion. Accordingly, we affirm.

VANDE WALLE, C.J., and NEUMANN and MESCHKE, JJ., and RALPH J. ERICKSTAD, Surrogate Judge, concur.

RALPH J. ERICKSTAD, Surrogate Judge, sitting in place of SANDSTROM, J., disqualified.