Filed 7/30/15  Conservatorship of the Person of D.B. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| Conservatorship of the Person of D.B. | |
| DEPARTMENT OF AGING & ADULT SERVICES PUBLIC CONSERVATOR, Petitioner and Respondent, v. D.B., Objector and Appellant. | A143412 (San Francisco County Super. Ct. No. PMH-09-021898) |

In 2009, the Department of Aging & Adult Services (Department) was appointed conservator of the person of D.B. pursuant to the Lanterman-Petris-Short (LPS) Act (Welf. & Inst. Code, § 5000 et seq.).[1]  In October 2014, at the most recent annual hearing to reestablish the conservatorship, the trial court adopted a "settlement," reestablishing the conservatorship, reached by D.B.'s appointed counsel and the Department.  The court did not conduct a formal hearing to determine whether D.B. remained gravely disabled and, if so, what disabilities should be imposed on him and what powers the conservator should have.  Neither did the court provide D.B. the advisements required by Probate Code section 1828 or consult with D.B. concerning the conservatorship as also required

---

[1] Further statutory citations are to the Welfare and Institutions Code, unless indicated otherwise.

1

by that section.  Finally, there is no indication in the record that D.B. agreed to the settlement reached by his appointed counsel.

D.B. maintains on appeal that he was deprived of his procedural due process rights at the reestablishment proceeding.  On the facts of this case, we agree and reverse.

## BACKGROUND

In 2006, pursuant to Penal Code section 1370, D.B. was admitted to Napa State Hospital having been found incompetent to stand trial on criminal charges that are not relevant to the issues presented in this appeal.  D.B.'s maximum term of commitment was set to expire on March 8, 2009.  On February 2, 2009, the trial court determined there was no likelihood that D.B. would regain competence to stand trial and directed the Department to initiate LPS conservatorship proceedings.

On March 5, 2009, the Department filed a petition alleging that D.B. was gravely disabled within the meaning of section 5008, subdivision (h).  A conservatorship investigation report stated that D.B. had been diagnosed with "Schizophrenia, Paranoid Type" and alcohol dependence.  On August 27, 2009, the trial court granted the petition and appointed the Department as the conservator of D.B.'s person.  The court annually reappointed the Department as D.B.'s conservator on August 12, 2010, August 11, 2011, August 2, 2012, and October 3, 2013.

On August 14, 2014, the Department filed the petition at issue in this case seeking reappointment as D.B.'s conservator for an additional year.  A physician's statement, filed on September 23, 2014, and signed by two medical doctors, attested that D.B. suffered from "SCHIZOPHRENIA, UNDIFFERENTIATED."  As "Specific Reasons for Grave Disability (food, clothing, shelter)" the statement asserted:  "[D.B.'s] disorder of logical thinking[,] universal paranoid suspicion and accompanying anxiety prevents discussion of the issue from needs to actions required to provide food, clothing and shelter.  He is unable to engage in conversations, answering questions or participating in hearings or other required involvements regarding these issues."

On October 2, 2014, the trial court held a hearing on the petition.  At the outset of the hearing, the court stated:  "Prior to the initiation of testimony, the parties were able to

work out a settlement, and I'd like to put it on the record with the request of the parties that if I make a mistake, I'd be informed so that we can correct it. [¶] The settlement is [D.B.] agrees to the renewal of the LPS conservatorship with a right to refuse or accept medication, and that there will be a placement report on the date that we will set for the possibility of transfer from Napa to another locked facility. It seems that [D.B.] was able to acquire evidence of his social security card, which enables the placement team to have more options in seeking alternative placement, if that's appropriate." The court asked: "Is that an accurate assessment of the settlement?" The assistant district attorney representing the Department affirmed that it was, but D.B.'s counsel made no reply. The court stated: "We'll put it on the record as follows: The petition for renewal of the LPS conservatorship is granted. The conservatee retains the right to consent or refuse medication. There will be a placement report outlining the possibility of a transfer to another locked facility."

The court then set January 8, 2015, for a placement report. D.B.'s counsel submitted the matter "on the report that the Court has as part and parcel of the Court's determination of the LPS renewal." The clerk asked whether there would be a hearing scheduled to consider the placement report, and D.B.'s counsel suggested the matter be taken off calendar but then said: "One moment, please. My client may have another question." There was then an off-record discussion after which the court stated: "[D.B.] wants the Court to acknowledge that his passport, his social security card and his driver's license were stolen, but he has, through the efforts of himself and those who are assisting him, been able to recover that information. [¶] He has received a letter from SSI requesting some back payments, which he contests, and he is in the process of making that contest. He's not—that matter will not be decided in this court because I don't have jurisdiction, but the Court wishes to congratulate [D.B.] on his untiring efforts to recover what was stolen from him. We're glad you're able to do so successfully. Thank you, sir." The proceedings then concluded.

On October 2, 2014, the trial court filed an order reappointing the Department as conservator of D.B.'s person. The order specified the powers of the conservator and the

disabilities imposed on D.B. (as incorporated from "the Conservator's Investigation Report," which is not part of the record on appeal). The order noted that a placement report was due on January 8, 2015.

D.B. timely filed a notice of appeal on October 23, 2014.

## DISCUSSION

The issue before us is whether the trial court's grant of the petition reestablishing the conservatorship deprived D.B. of procedural due process because the court's order was based on a stipulated settlement, the court did not obtain D.B.'s express consent to the settlement on the record and the court did not comply with Probate Code section 1828. These are legal issues that we review de novo. (*Conservatorship of Christopher A.* (2006) 139 Cal.App.4th 604, 610 (*Christopher A.*)

### I.

### *Legal Background*

**A.    The LPS Act**

In *Conservatorship of John L.* (2010) 48 Cal.4th 131 (*John L.*), the Supreme Court provided background about the LPS Act: "The LPS Act governs the involuntary detention, evaluation, and treatment of persons who, as a result of mental disorder, are dangerous or gravely disabled. (§ 5150 et seq.) The Act authorizes the superior court to appoint a conservator of the person for one who is determined to be gravely disabled (§ 5350 et seq.), so that he or she may receive individualized treatment, supervision, and placement (§ 5350.1). As defined by the Act, a person is 'gravely disabled' if, as a result of a mental disorder, the person 'is unable to provide for his or her basic personal needs for food, clothing, or shelter.' (§ 5008, subd. (h)(1)(A).)

"Integral to the LPS Act is its procedure for ascertaining whether a conservatorship of the person should be established. Each county is required to designate an agency to undertake an investigation to aid the court in determining whether a conservatorship is appropriate (§ 5351), and the investigating officer must submit a comprehensive written report to the court prior to the conservatorship hearing (§ 5354). The written report must include 'all relevant aspects of the person's medical,

4

psychological, financial, family, vocational and social condition, and information obtained from the person's family members, close friends, social worker or principal therapist.' (*Ibid.*) It must also state whether the investigator recommends a conservatorship and, if not, identify all available alternatives. (*Ibid.*) When a conservatorship is recommended, the report must make recommendations concerning a suitable conservator, the powers and duties to be granted and imposed upon the conservator, the legal disabilities to be imposed upon the proposed conservatee, and the appropriate placement. (§§ 5355, 5356.)

"The procedures for establishing a conservatorship include a number of requirements pertaining to notice, hearing and trial rights, and other matters. Specifically, the petition for appointment of a conservator of the person and the citation for conservatorship must be served upon the proposed conservatee at least 15 days before the scheduled hearing date, and the proposed conservatee must be given notice of the privileges and rights subject to deprivation as part of the conservatorship. (§ 5350; Prob. Code, §§ 1823, 1824.)[2] A hearing must be held within 30 days of the date of the petition, and the court must 'appoint the public defender or other attorney for the . . . proposed conservatee within five days after the date of the petition.' (§ 5365.) The proposed conservatee 'shall have the right to demand a court or jury trial on the issue whether he or she is gravely disabled,' but must do so before or within five days following the hearing on the conservatorship petition. (§ 5350, subd. (d).) The party seeking imposition of the conservatorship must prove the proposed conservatee's grave disability beyond a reasonable doubt, and a jury verdict finding such disability must be

---

² Section 5350 specifies that the "procedure for establishing, administering, and terminating a conservatorship under this chapter shall be the same as that provided in Division 4 (commencing with Section 1400) of the Probate Code," followed by listed exceptions that are not implicated by the issues before us. Division 4 of the Probate Code embodies the Guardianship-Conservatorship Law, a separate statutory scheme governing the appointment of conservators of the person for "adults who for any reason are incapable of taking care of themselves." (38 Cal.Jur.3d (2006) Incompetent Persons, § 3, p. 180.) Accordingly, LPS conservatorship proceedings are governed not only by the Welfare and Institutions Code, but also by provisions in the Probate Code.

unanimous.  (*Conservatorship of Roulet* (1979) 23 Cal.3d 219, 235.)  An LPS conservatorship automatically terminates after one year, and reappointment of the conservator must be sought by petition.  (§ 5361.)"  (*John L.*, *supra*, 48 Cal.4th at pp. 142-143.)  Whether or not the conservatee demands a jury trial on the issue of grave disability, the conservatee has a "right to a court hearing on the issues of placement, disabilities [imposed on the conservatee], and powers of the conservator."  (*Christopher A.*, *supra*, 139 Cal.App.4th at p. 612.)

Among the procedural requirements of an LPS conservatorship proceeding is Probate Code section 1828, providing that "prior to the establishment of a conservatorship [and assuming the proposed conservatee's presence has not been excused], the court shall inform the proposed conservatee" of, among other things, "the nature and purpose of the proceeding"; the effect the proceeding might have on the conservatee's basic rights; the potential that the conservatee might be disqualified from voting; the identity of the proposed conservator; and the right to oppose the proceeding and have the matter of the establishment of the conservatorship tried by jury.  (Prob. Code, § 1828, subd. (a).)  After the court provides this information, "the court shall consult the proposed conservatee to determine the proposed conservatee's opinion" concerning the establishment of the conservatorship and the appointment of the proposed conservator.  (*Id.*, § 1828, subd. (b).)

"[C]onservatees are not, by reason of their conservatorship, automatically considered incompetent, and their ability to knowingly and intelligently waive their hearing rights is a question of fact . . . ."  (*Conservatorship of Moore* (1986) 185 Cal.App.3d 718, 732 (*Moore*).)

## B.    Due Process

" ' "The question of whether due process has obtained can only be answered by scrutinizing the circumstances in which the deprivatory action arose.  [Citations.] 'Because of the broad spectrum of concerns to which the term must apply, flexibility is necessary to gear the process to the particular need; the quantum and quality of the process due in a particular situation depend upon the need to serve the purpose of

minimizing the risk of error.  [Citation.]' " [Citation.]' [Citation.]  In conservatorship cases, we balance three factors to determine whether a particular procedure or absence of a procedure violates due process:  the private interests at stake, the state or public interests, and the risk that the procedure or its absence will lead to erroneous decisions." ' " (*John L.*, *supra*, 48 Cal.4th at p. 150.)

Because a person found to be gravely disabled may be involuntarily confined for up to one year, and the conservatorship may be extended for additional one-year periods so long as the person remains gravely disabled, "[t]here can be no doubt that '[t]he liberty interests at stake in [an LPS] conservatorship proceeding are significant.' " (*John L.*, *supra*, 48 Cal.4th at p. 150, quoting *Conservatorship of Ben. C.* (2007) 40 Cal.4th 529, 540 (*Ben C.*).)  "Likewise, there is no question that the public interests promoted by the LPS Act are substantial." (*John L.*, at p. 150.)  Because the private interests implicated in an LPS conservatorship are significant, "several layers of important protections" have been built into the system (*Ben C.*, at p. 540), including the provisions of Probate Code section 1828, to "vigilantly guard[ ] against erroneous conclusions" in such proceedings. (*Id.* at p. 542.)

A due process challenge to an LPS conservatorship proceeding was considered in *Christopher A*.  In that case, the conservatee demanded a jury trial on the issue of whether he was gravely disabled.  (*Christopher A.*, *supra*, 139 Cal.App.4th at p. 608.)  The jury returned a unanimous verdict of grave disability.  (*Id.* at p. 609.)  Outside the presence of the jury, on the same day as the jury trial, a doctor testified on the issues of least restrictive placement, disabilities and proposed powers of the conservator.  (*Ibid.*) "Before the conclusion of the trial, [the public conservator] prepared and submitted to the court and Short [Christopher's counsel] a proposed judgment.  After the jury returned its verdict, Short informed the court the proposed judgment required clerical changes but he anticipated reaching an agreement with [the public conservator] on the terms of the judgment.  The proposed judgment was approved by Short and subsequently signed by the court.  The court did not obtain on the record Christopher's consent regarding the

7

contents and consequences of the judgment that had been approved by Short." (*Ibid.*, fn. omitted.)

On appeal, Christopher contended "the court erred by accepting the stipulated judgment submitted by the attorneys without first consulting him on the consequences of the agreement." (*Christopher A.*, *supra*, 139 Cal.App.4th at p. 610.) The Court of Appeal observed: "By accepting the stipulated judgment, the court allowed Short to waive Christopher's right to a court hearing on the issues of placement, disabilities, and powers of the conservator. The role of an attorney in litigation is to '[protect] the client's rights and [achieve] the client's fundamental goals.' [Citation.] In carrying out this duty, the attorney has the general authority to stipulate to procedural matters that may ' "be necessary or expedient for the advancement of [the] client's interest[s]." ' [Citation.] However, the attorney may not, without the consent of his or her client, enter into an agreement that 'impair[s] the client's substantial rights or the cause of action itself.' [Citation.] Here, the only evidence presented on the issues of placement, disability, and conservator powers was the testimony of [a doctor] given during a separate court evidentiary hearing on the day of the trial. After the jury returned its verdict, the discussion of these issues was limited to the status of a proposed judgment submitted by [the public conservator]. . . . The court addressed Christopher only twice: when he asked to make a statement to the court and it advised him to discuss concerns first with his attorney; and, finally, to wish him luck. Three weeks later the proposed judgment, which was approved by Short, was submitted to and signed by the court. Nothing in the record shows Christopher consented to the terms of the proposed judgment regarding placement, disabilities, and conservator powers." (*Id.* at pp. 612-613, fn. omitted.)

The *Christopher A.* court concluded that "a stipulated judgment approved by the conservatee's attorney and adopted by the court after no formal hearing on the issues of placement, disabilities, and powers of the conservator is not a constitutionally sound safeguard against error. We reach this conclusion even though both the investigator's report and the testimony of [the doctor] tended to support the conclusions in the judgment. A proposed conservatee is at risk of substantial deprivation of his or her

liberty interests for *at least* a period of one year. [Citation.] To allow the conservatee's attorney to waive the right to a hearing and agree to the extent of the deprivation without the express consent of the conservatee is contrary to the principles of procedural due process. A waiver of the right to a hearing on these issues eliminates a procedural safeguard already in place. Therefore, we conclude that before accepting a stipulated judgment on placement, disabilities, and conservator powers, the court on the record must consult with the conservatee to instruct him or her on the consequences of the stipulation and obtain the conservatee's express consent to the stipulation on those issues." (*Christopher A.*, *supra*, 139 Cal.App.4th at p. 613, fn. omitted.)

A conservatee's counsel may waive the right to a jury trial on the issue of grave disability, so long as there is no objection by the proposed conservatee (*Conservatorship of Maldonado* (1985) 173 Cal.App.3d 144, 148 (*Maldonado*) [relying on Code Civ. Proc., § 283, providing that an attorney has authority "[t]o bind his client in any of the steps of an action or proceeding by his agreement . . . entered upon the minutes of the Court"]), but with regard to other waivers of rights due to a conservatee in LPS conservatorship proceedings, we find no case concluding that the requirements of procedural due process were met without at least a representation to the court that the conservatee agreed to the waiver. In *Moore*, counsel waived a hearing on the reestablishment of conservatorship petition, the trial court reestablished the conservatorship, and the Court of Appeal affirmed, but the waiver was made in a sworn declaration by counsel that he " 'ascertained that [conservatee] does not oppose the reestablishment.' " (*Moore*, *supra*, 185 Cal.App.3d at pp. 724, 733.) In *Conservatorship of Tian L.* (2007) 149 Cal.App.4th 1022 (*Tian L.*), conservatee's counsel waived conservatee's appearance and stipulated to the physician's report and qualifications, the trial court reestablished the conservatorship, and the Court of Appeal affirmed. (*Id.* at pp. 1027, 1033.) However, the waiver was made in a sworn statement attesting that counsel had personally visited the conservatee and that conservatee had knowingly and willingly consented to reestablishment of the conservatorship by stipulation and without a formal court hearing. (*Id.* at p. 1027.) *Conservatorship of Deirdre B.* (2010) 180 Cal.App.4th 1306 (*Deirdre B.*) involved a

9

waiver similar to that in *Tian L.*, accompanied by a similar sworn statement by counsel. (*Id.* at p. 1310.)

In *John L.*, conservatee's counsel asked the trial court to excuse conservatee's presence, informing the court that he had met with conservatee and discussed the conservatorship and that conservatee did not wish to contest the conservatorship or be present in court. (*John L.*, *supra*, 48 Cal.4th at p. 141.) The *John L.* court first considered whether conservatee's waiver of his presence at the proceeding through counsel was permitted by the LPS Act and the incorporated provisions of the Probate Code.[3] (*Id.* at pp. 143-149.) The court concluded that the Act, in combination with Code of Civil Procedure section 283, which permits an attorney to make binding representations in court on behalf of her client, allows such a waiver. (*Id.* at pp. 146-149.)

Having concluded that no statutory violation occurred, the court proceeded to consider whether the conservatee had been deprived of procedural due process. (*John L.*, *supra*, 48 Cal.4th at pp. 149-157.) The court relied heavily on *Moore* and, like *Moore*, concluded that no due process violation had occurred: "*Moore* emphasized the significance of a conservatee's representation by counsel in determining the validity of the conservatee's waiver of a hearing or trial: ' "When counsel is present, a voluntary and intelligent waiver of known rights may properly be inferred from the record, without a specific on-the-record showing as to each right." ' " (*Id.* at pp. 152-154, 156.) However, the *John L.* court also relied on the fact that the trial court had adhered to the

---

[3] Probate Code section 1825, subdivision (a), provides that "[t]he proposed conservatee shall be produced" at the hearing to establish a conservatorship, subject to three exceptions. Subdivision (a)(3) provides that the conservatee may be excused from attending if he expressly informs the "court investigator" that he is unwilling to attend and does not contest the conservatorship or oppose the proposed conservator. Probate Code section 1826, subdivision (a)(1), requires the court investigator to interview the proposed probate conservatee personally, but the LPS Act specifies that Probate Code section 1826 does not apply to LPS conservatorships (§ 5350, subd. (f)), in which an agency-designated official is charged with conducting an investigation instead of an investigator appointed by the court (see §§ 5351, 5354, 5356).

LPS Act's due process protections: "When we consider the combination of due process protections that have been built or read into the LPS Act, . . . we have no difficulty concluding that these numerous checks sufficiently guard against the risk of erroneous conservatorship decisions, without the need to impose additional waiver-related requirements." (*Id.* at p. 154.) The court stressed that its conclusion was "consistent with decisions generally recognizing that, even though certain rights implicated in civil proceedings are substantial, they may be waived by an attorney with the client's express consent." (*Id.* at p. 156, citing *Christopher A.* among other cases.) The court also noted that its conclusion "also finds support in prior decisions acknowledging that, in the absence of any contrary indication, the superior court may assume that an attorney is competent and fully communicates with the proposed conservatee about the entire proceeding." (*Id.* at p. 156.)

## II.

### *D.B. Was Not Afforded Due Process.*

At the hearing to reestablish the conservatorship in this case, the court at the outset announced that a settlement had been reached and stated the terms. Counsel for the Department (an assistant district attorney) and counsel for D.B. were present, as was D.B. When the court inquired whether its statement of the terms accurately reflected the settlement, only the Department's counsel responded. The court made no further inquiry either to D.B. or his counsel to ensure that the settlement was accurately stated, much less that D.B. knew, understood and agreed to its terms, including the implied waiver of a hearing on the issues of whether he remained gravely disabled, disabilities to be imposed and powers of the conservator. On this record, we cannot conclude that D.B. was afforded due process.

All of the leading cases that have found no due process violation in the waiver of fundamental rights by a conservatee's counsel differ from this case in two important respects, both of which are evident when we compare D.B.'s case with that of *John L.* First, and most importantly, because D.B. was present at the hearing, the waiver here occurred in the face of a violation of Probate Code section 1828, one of the checks

11

implemented to guard against the risk of erroneous conservatorship decisions, but *John L.* did not involve a statutory violation. Second, unlike *John L.*, there was no representation by D.B.'s counsel that the stipulated settlement was in accord with D.B.'s wishes. Because of these differences we conclude that *John L.*'s holding that no due process violation occurred does not control in this case.

We find no case in which a court concluded that a waiver of fundamental rights did not violate due process when a statutory protection implemented to guard against the risk of erroneous conservatorship decisions had been ignored. No such statutory violation occurred in *John L.*, *Moore*, *Tian L.*, *Maldonado* or *Deirdre B.* In *Conservatorship of Mary K.* (1991) 234 Cal.App.3d 265 (*Mary K.*), counsel waived the right to a jury trial and the Probate Code section 1828 advisements and the court found no due process violation, providing authority for the waiver of section 1828 rights. (*Id.* at p. 269.) However, in D.B.'s case there was no such waiver, and in *Mary K.* the conservatee testified at the bench trial and clearly stated her views about the reestablishment of conservatorship. (*Id.* at pp. 268-269.)

On the other hand, in the two cases we find in which there was a violation of statutory protections implemented to guard against the risk of erroneous conservatorship decisions—*Christopher A.* and *Conservatorship of Benvenuto* (1986) 180 Cal.App.3d 1030 (*Benvenuto*)—the court concluded the conservatees had been deprived of due process. In *Conservatorship of Benvenuto* (1986) 180 Cal.App.3d 1030 (*Benvenuto*), the court reversed reappointment of a conservator because the conservatee had not been advised of his right to a jury trial prior to the hearing (as required by section 5362) and there was no on-the-record waiver of that right. (*Id.* at pp. 1037-1039.) The *Benvenuto* court also noted that the trial court had failed to satisfy the requirements of Probate Code section 1828. (*Id.* at p. 1038.)

Similarly, with the exception of *Maldonado*,[4] we find no case in which the court rejected a due process challenge to a waiver of rights by conservatee's counsel without some representation that counsel had communicated with the conservatee and the waiver was consonant with the conservatee's wishes. The waivers in *Moore, Tian L.* and *Deirdre B.* were accompanied by sworn statements by counsel. The waiver in *John L.* was accompanied by counsel's representation on the record that he had met with the conservatee and the waiver was in accord with the conservatee's wishes. The waiver in *Mary K.* was accompanied by a similar representation. (*Mary K.*, *supra*, 234 Cal.App.3d at p. 269.)

In contrast, here there was no representation by counsel that he had consulted with D.B. or that D.B. was in agreement with the proposed settlement. Such was the case in *Christopher A.*, cited by *John L.* without criticism, and which we are unable to distinguish from D.B.'s case in any material respect. In *Christopher A.*, the settlement agreed to by the attorneys constituted a waiver of Christopher's right to a court hearing on the issues of placement, disabilities, and powers of the conservator. In D.B.'s case, the settlement agreed to by the attorneys constituted an implied waiver of D.B.'s right to a court hearing on disabilities and powers of the conservator *as well as* on the fundamental issue of whether D.B. remains gravely disabled. In both cases, the court failed to adhere to the requirements of Probate Code section 1828.[5] In *Christopher A.* the

---

[4] *Maldonado* concerned the express waiver of a right to a jury trial, which in the case of conservatorship proceedings is a matter of statutory, not constitutional, right. (*Maldonado*, *supra*, 173 Cal.App.3d at pp. 146-148.) In D.B.'s case, the waiver was not express—nor was it in *Benvenuto*, and the court found that to distinguish the case from *Maldonado*. (*Benvenuto*, *supra*, 180 Cal.App.3d at p. 1038.) (Here, counsel for the Department acknowledged at oral argument, it is "difficult to have implied express consent.") Moreover, the implied waiver in D.B.'s case was of the right to any hearing at all, a right far more fundamental than whether a jury or the court would consider the issue of grave disability.

[5] The requirements of Probate Code section 1828 are not onerous. The advisement and consultation requirements of that section, coupled with the mandate that the conservatee be present except in certain circumstances (see Prob. Code, § 1825), serve the dual purpose of ensuring that the proposed conservatee is informed of her rights

court did not address Christopher in a meaningful way and in this case the court only acknowledged an off-the-record discussion related to D.B.'s reacquisition of certain personal documents. In neither case is there any indication in the record that the conservatee consented to the judgment negotiated by the attorneys and adopted by the court.

The Department's effort to distinguish this case from *Christopher A.* is unconvincing. It argues: "Contrary to *Christopher A.*, the instant matter is not an appeal related to the initial finding of a grave disability as the result of a mental illness. Here, that finding was made six years ago when [D.B.] was first conserved. [Citation.] The instant matter is, rather, an appeal of the fifth annual renewal of [D.B.'s] conservatorship." That *Christopher A.* concerned the initial establishment of a conservatorship and this case concerns the reestablishment of a conservatorship is irrelevant to our analysis. Nothing in the LPS Act implies that the rights of a conservatee are any less at the reestablishment of a conservatorship than at the original establishment. Nor does anything in the Act imply that lesser procedural requirements apply at reestablishment than at original establishment. (See *Benvenuto*, *supra*, 180 Cal.App.3d at p. 1038 [noting that Probate Code section 1828 advisements are applicable in proceedings to reestablish an LPS conservatorship].) At any reestablishment of conservatorship proceeding, the conservatee is entitled to a hearing or jury trial concerning whether he or she remains gravely disabled and a hearing on placement, disabilities, and powers of the conservator. A stipulated settlement waives those rights in a reestablishment proceeding no less than it does in an initial establishment of a conservatorship. Both initial establishment and reestablishment of a conservatorship involve deprivation of the conservatee's liberty for at least one year.

The Department further attempts to distinguish this case from *Christopher A.* as follows: "Also contrary to *Christopher A.*, [D.B.] was present in court when the

---

and may, if willing and able, meaningfully participate in the process that will determine whether and how she is conserved. In other words, it ensures that the conservatee will not be marginalized by counsel and the court.

14

commissioner made his order in the instant matter, and the order was made on the record when the case was scheduled for hearing, not three weeks later, off the record, and outside the presence of the conservatee." We fail to see how this makes a difference. The deprivation found by the *Christopher A.* court was the approval of a stipulated judgment without the consent of the conservatee obtained on the record. That is exactly what happened here. The Department would have us regard D.B.'s silence as implied approval of the settlement outlined before him by the court, but we are not prepared to do so here, where the court failed to satisfy the requirements of Probate Code 1828 by providing advisements to the conservatee and "consult[ing]" with the conservatee. When a proposed conservatee has not been advised by the court about the nature of the proceedings and the rights to which he or she is entitled, as required by Probate Code section 1828, the conservatee's silence cannot be presumed to signal acquiescence.

Finally, the Department argues that D.B. forfeited appeal on the issue of the court's failure to obtain his consent on the record by failing to object to the settlement. In general, to preserve an issue for appeal, an objection made on specific grounds must be made in the trial court in order to afford the opposing party or the court an opportunity to cure the defect. (*People v. Partida* (2005) 37 Cal.4th 428, 433-434.) As with the meaning we attach to D.B.'s silence, we are not prepared to apply the general rule of forfeiture in this case. The conservatee's failure to object to a settlement, agreed to by his appointed counsel without a representation that conservatee was advised of his or her rights and agreed to the settlement, does not forfeit the issue on appeal when the court itself fails to adhere to a statutory provision that guards against the risk of erroneous conservatorship decisions.

What the case law teaches us is that a proposed conservatee can waive his or her rights to procedures that afford due process (such as jury trial or other hearing concerning whether he or she is gravely disabled), but that such a waiver requires some indicia that it was knowingly made by the proposed conservatee. The statutory requirements for advisement and consultation by the court provide such indicia, as does counsel's

15

statement to the court that the conservatee was advised and consented to the waiver.

Here, we have neither. Accordingly, we reverse.

## DISPOSITION

The order reappointing the conservator is reversed.

_____

STEWART, J.

We concur.

_____

KLINE, P.J.

_____

MILLER, J.